(67 Misc. Rep. 481.)

PEOPLE ex rel. QUEENS BOROUGH GAS & ELECTRIC CO. v. WOODBURY et al., State Board of Tax Com'rs.

(Supreme Court, Equity Term, Kings County.     March 9, 1910.)

1. TAXATION (§ 496*)—ASSESSMENT—EQUALITY—RIGHT TO COMPLAIN.

Mere assessment of property for taxation at a higher valuation than other property does not entitle the owner to relief; he being required to show assessment at a higher proportionate valuation than that generally prevailing throughout the district taxed, or which is fixed by law for the purpose of comparison.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 894; Dec. Dig. § 496.*]

2. TAXATION (§ 496*)—SPECIAL FRANCHISES—EQUALITY OF ASSESSMENT—BASIS FOR ASCERTAINING.

Under Tax Law (Consol. Laws, c. 60) § 46, making sections 290–307 applicable to the assessment of special franchises, under sections 290–307, which allow complaints against assessments' on the ground that they are made at a higher proportionate valuation than other assessments on

the same roll by the same officers, and under New York Charter (Laws 1901, c. 466) § 907, requiring assessment rolls to be prepared for each borough, in determining whether the assessment of a special franchise is unequal, comparison must be made with the real and personal property in the borough or county, comparison not being properly made with the average assessment of land in the particular ward; but when a question of inequality is tried in a certiorari proceeding, under the charter, comparison may be made between relator's assessment and the assessment of other land in the same ward, section, or other part of the city.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 496.*]

3. CERTIORARI (§ 64*)—ISSUES TRIABLE.

On certiorari, the petition is the complaint, and the return the answer, and only issues so presented are triable.

[Ed. Note.—For other cases, see Certiorari, Dec. Dig. § 64.*]

4. PLEADING (§ 11*)—COMPLAINT—CONTENTS—EVIDENCE.

Usually a complaint should contain only the ultimate facts constituting the cause of action, and not evidence.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 31; Dec. Dig. § 11.*]

5. TAXATION (§ 496*)—ASSESSMENT—REVIEW—PLEADING.

Tax Law (Consol. Laws, c. 60) § 290, requiring a petition to review an assessment on the ground of inequality to specify the instances in which the inequality exists, applies to a petition to review the assessment of a special franchise.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 903; Dec. Dig. § 496.*]

6. TAXATION (§ 496*) — ASSESSMENT — REVIEW—PLEADING—RETURN—ESSENTIALS.

Under Tax Law (Consol. Laws, c. 60) § 290, requiring a petition to review an assessment on the ground of inequality to specify the instances of inequality, if the return does not deny the instances, they stand admitted.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 903; Dec. Dig. § 496.*]

7. TAXATION (§ 496*) — ASSESSMENT — REVIEW — PLEADING—RETURN — SUFFICIENCY.

Under Tax Law (Consol. Laws, c. 60) § 290, requiring a petition to review an assessment on the ground of inequality to specify the instances of inequality, on certiorari to review the assessment of a special franchise, a return denying every allegation of the petition, except so far as shown to be true by the return, is objectionable, as being argumentative and indefinite, but is sufficient as a denial of the truth of the allegation of special instances, unless motion to make more definite is made.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 496.*]

8. EVIDENCE (§ 555*)—EXPERT TESTIMONY—SUMMARY OF FACTS.

An expert witness' statement of the relation of the assessed to the actual value of taxable property in a ward was properly received as a résumé of the instances upon which the testimony was based, where neither party called for the evidence of the instances, a tabulation of which the witness had.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2376; Dec. Dig. § 555.*]

9. TAXATION (§ 496*)—ASSESSMENT—EQUALITY—EVIDENCE.

Evidence of the actual and the assessed value of each piece of property in a county is proper, on the issue of inequality of an assessment for taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 906; Dec. Dig. § 496.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

123 N.Y.S.—38

10. TAXATION (§ 496*)—ASSESSMENT—EQUALITY—EVIDENCE—WEIGHT.
Evidence. *held* to show that the special franchise of a public utility was assessed at a higher proportionate valuation than other property on the same roll by the same officers.
[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 496.*]

11. TAXATION (§ 496*)—ASSESSMENT—EQUALITY—EVIDENCE.
Evidence that the local assessors did not assess land at its full value does not tend to show that the state board of tax commissioners so acted respecting a special franchise.
[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 496.*]

12. TAXATION (§ 496*)—ASSESSMENT—REVIEW—COSTS.
Under the express terms of Tax Law (Consol. Law, c. 60) § 294, relator in certiorari to review the assessment of its special franchise, must bear the costs, where the reduction of the assessment is less than one-half of the amount claimed before the assessing officers.
[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 496.*]

Certiorari by the People of the State of New York, on the relation of Queens Borough Gas & Electric Company, against Egbert E. Woodbury and others, constituting the State Board of Tax Commissioners, to review the assessment of a special franchise. Judgment rendered.

Alfred T. Davison, for relator.

Edward R. O'Malley, Atty. Gen. (John Hill Morgan, of counsel), for the People.

Archibald R. Watson, Corp. Counsel (Addison R. Scoville, of counsel), for city of New York, intervening.

BLACKMAR, J. I understood that, when the relator withdrew his witness before the cross-examination was concluded, the claim of overvaluation was abandoned. At any rate, there is no sufficient evidence of overvaluation. The only question for consideration relates to the claim of inequality.

The mere fact that an individual is assessed at a higher rate than others does not in itself entitle him to relief. He must go farther, and show that he is injured by this inequality. He is not injured simply because another pays taxes on a lower schedule of values, but only when he pays more than his just proportion of the total amount of the taxes assessed. This can be shown only by establishing the fact that the assessment is at a higher proportionate valuation than that generally prevailing throughout the district which contributes to pay the taxes, or which is fixed by law for the purpose of comparison.

The question of inequality, and whether the relator is injured thereby, cannot be determined until the district with which the comparison is to be made is ascertained. The relator claims that it is sufficient to show that he is assessed at a higher rate than the average of assessment of real property in the Fifth ward of Queens county. The defendants claim that the relator must show that he is assessed at a higher per cent. of value than the average assessment of all who contribute to the payment of taxes spread over the assessment roll; that the greater amount of taxes are raised for city purposes; and that therefore the relator does not show itself to be aggrieved, unless it shows that the assessment is unequal with all the taxes imposed upon

all property, both real and personal, in Greater New York. The defendants further claim that, if this rule of equalization is not adopted, it must be shown that the assessment is at a higher proportionate valuation than is the general assessment for taxes in the borough of Queens. At the outset of this inquiry it is necessary to decide this question of law.

Section 46 of the tax law (Consol. Laws, c. 60) provides that the assessment of special franchises may be reviewed in the manner prescribed by article 13 of the tax law, and that such article applies so far as practicable to such assessment in the same manner and with the same force and effect as though the assessment had been made by the local assessors. Turning to article 13, we find it there provided that any person assessed upon any assessment roll, claiming to be aggrieved, may present to the court a petition setting forth that the assessment is illegal, erroneous, or unequal, in that the assessment has been made at a higher proportionate valuation than the assessment of other property on the same roll by the same officers. In the case of People ex rel. Jamaica Water Supply Co. v. State Board of Tax Commissioners, 196 N. Y. 39, 89 N. E. 581, the court held that the provisions of section 43 of the tax law that the valuation of special franchises, when certified to the local officers, shall be entered upon the roll and become a part thereof with the same force and effect as if such assessment had been originally made by such assessors, is a legislative determination that for the purposes of a writ of certiorari franchise taxes and local taxes are assessed by the same officers. The question then remains: What is the assessment roll upon which this special franchise tax is entered? Having ascertained this, the question of inequality resolves itself into a comparison of the relator's assessment with other assessments upon the same roll.

I think that the charter of the city of New York plainly provides that there is a separate assessment roll for each borough of the city. There are several sections which lead to this conclusion; but it is sufficient to cite the provisions of section 907 of the Charter (Laws 1901, c. 466), as follows:

"Beginning with the first day of April in each year the board of taxes and assessments shall cause to be prepared from the books of annual record of assessed valuations of real and personal estate in the several offices of the department of taxes and assessments in the several boroughs, assessment rolls for each of said several boroughs."

See, also, sections 892, 899, and 900.

It is true that, when the question of inequality is tried out in a certiorari proceeding brought under the city charter, comparison may be made between the relator's assessment and the assessment of other property in the same ward or section, or other part of the city, and that the inquiry is confined to the assessment of real property. But this question is being tried out, not under the provisions of the charter, but under the provisions of the tax law, and a sufficient reason for the Legislature requiring that these questions relating to special franchises should be litigated under the tax law, instead of under the provisions of the charter governing certiorari, may be found in the fact that most

of the special franchises are not embraced within the limits of a single ward or section. The provision of the charter that equalization may be made with other property in the same ward or section could not be intelligently applied to most of the questions of inequality in the valuation of special franchises. The comparison with a ward or section is a rule of evidence governing proceedings under the charter only, and was plainly adopted as a measure of convenience. The provisions of the tax law, construed with other statutes, requires the comparison to be made with property in the borough, or, what is the same thing, in the county, and with personal, as well as with real, property. This determination is in accord with the decision of the Court of Appeals in the Jamaica Water Company Case, where equalization was directed between the relator's property and the average assessed valuation in the county of Queens.

We have then remaining the question of fact—whether the property of the relator was assessed at a higher proportionate valuation than the other property in Queens county. A consideration of the pleadings and evidence now becomes necessary.

The relator claims that the return does not deny the allegations setting out the specific instances of inequality, and that therefore they are admitted, and are facts before the court in determining the ultimate question of inequality. In a proceeding of this nature, the petition is the complaint and the return is the answer, and only the issues so presented are to be tried. The petition in this case contains the allegation that property in general in Queens county is assessed at 50 per cent. of its value, and sets forth a list of the instances in which such inequality exists. The only denial contained in the return is couched in the following language:

"That said state board of tax commissioners denies each and every allegation contained in the petition or writ herein, except in so far as the same are shown to be true by this return,"

—and except that the defendant denies that the assessment is illegal, or erroneous by reason of overvaluation, or unequal in that it was made at a higher proportionate valuation than the assessment of other property on the same roll by the same officers.

The relator claims that this denial is not sufficient to put in issue the allegation of instances of inequality. Usually evidence has no place in a complaint, which should contain only the ultimate facts constituting the cause of action. The instances are really evidence of the ultimate fact of inequality; but the statute expressly provides that the petition shall contain them. Section 290 of the tax law. The reason for inserting them in the petition is to tender an issue. There is no other conceivable reason for requiring that the petition should contain them. If the return does not deny them, they stand admitted. The denial of every allegation in the petition, "except in so far as the same are shown to be true by this return," is objectionable as argumentative and indefinite. But nevertheless it is a denial; for it cannot be said that the return shows that these allegations of special instances are true. On motion, the court would probably require the return to be made more definite; but I do not think that the relator can

lie by until trial and then claim that the return does not put these allegations in issue. It does put them in issue, but argumentatively and unscientifically. The case of People v. Barker, 139 N. Y. 55, 34 N. E. 722, and other like cases, are not in point; for the state board has no power to reduce for inequality, and therefore cannot be said to have accepted or acted on any allegation of inequality contained in the relator's petition for a revision of the tax.

The evidence of the relator was confined to property in the Fifth ward of the county of Queens. An expert, Mr. Haynes, was called, and was asked the question what relation the assessed valuation in the Fifth ward of the county of Queens bore to the actual value of the property assessed. My own opinion at the trial was that this is not a proper subject of expert testimony, that the evidence offered was a summary of other facts and a conclusion or an inference drawn from those facts, and that the witness, instead of testifying to his conclusion from his knowledge of specific instances, should have testified to such instances, and left the conclusion to the court. On the fact being shown that evidence of this nature was introduced and approved by Judge Earl, as referee, in the case of People ex rel. Metropolitan Street Railway Company v. State Board of Tax Commissioners, and that it formed the basis of an order reducing the taxes of the relator as unequal, and that such order was affirmed by the Court of Appeals in 174 N. Y. 417, 67 N. E. 69, 63 L. R. A. 884, 105 Am. St. Rep. 674, I admitted the evidence, subject to a motion to strike it out. It is possible that this evidence may be taken as a résumé of the witness' knowledge of the specific instances, and, if the specific instances were before the court, it might be admissible on the same ground that a computation of figures is admissible. The witness was asked upon cross-examination upon what he formed his opinion, and he said on actual sales of property made by him and the relation between the selling price and the assessed valuation; and, although he held in his hand a list of those sales, containing the prices at which they were made and the assessed value, neither side asked him to produce it. I am inclined to let the evidence stand as a résumé of these specific instances upon which it was based, chiefly because neither side called for the evidence of the instances, a tabulation of which the witness held in his hand, and to give the defendant an exception, if it so desires. This witness claimed that property at large through the Fifth ward was assessed at about 50 per cent. of its actual value. Another witness, Mr. Spark, was called, who testified that he had taken at random on the assessment roll 60 different pieces of property in the Fifth ward and had devoted one day to an examination of such property, which formed the basis of his opinion of their value, and that he found that upon the basis of these instances property was assessed at about 40 per cent. of its value in the Fifth ward.

The defendants proved simply the fact that the state board of equalization has rated the assessed valuation of property in Queens county at 87 per cent. for the purpose of equalizing the state taxes. This fact was offered as evidence on the subject of inequality, and its competency was not objected to. It may therefore be considered as evidence by the practical consent of both parties. A reading of the provisions of

the tax law governing equalization by the state board of equalization shows that this was not a determination by the state board that property in Queens county was assessed at 87 per cent. of its real value, but that the assessed value of property in Queens county should be rated at 87 per cent. for the purpose of equalization. The statute requires that the total amount of the assessed value of all property in the state shall not be reduced. It follows that the state board must have rated other property at more than 100 per cent., and that 100 per cent. does not represent actual value, but the equalized value of all property. In view of the fact, however, that to reach an equalization many of the assessments in the state must have been rated at above 100 per cent., and that local assessors are loath to overassess property in their own districts, I regard 87 per cent. as probably in excess of the ratio which the assessed value bears to the actual value.

The evidence relating to the Fifth ward tends to show that real property there is assessed at 50 per centum of its actual value. The evidence is not very persuasive, as it is too limited in its scope, and I do not find it necessary to say whether I should hold upon the evidence alone that the ratio of 50 per centum obtains even in this ward. It is in evidence that the value of real property in this ward is rapidly advancing; and, as the increase in assessments usually lags behind the advance in market values, I can believe that the ratio of disparity is greater in this ward than in other places. The total valuation of assessed property in the Fifth ward is only one-sixteenth of the total valuation in the borough. I cannot, therefore, hold that the ratio of inequality in the Fifth ward pervades the whole borough; nor is evidence of the condition in the Fifth ward alone sufficient to sustain a finding as to the whole borough, especially as each ward has a separate deputy, who makes the assessment subject to the action of the tax commissioners.

The fact of inequality is difficult of proof. There are shown to be 110,579 different pieces of property in Queens county. Evidence of the actual value and the assessed valuation of each of these pieces would be relevant to the issue of inequality; but it is entirely impracticable to receive such a volume of evidence. It was probably for this reason that Judge Earl admitted opinion evidence on the subject. For the same reason, probably, the opinion or conclusion of the state board of equalization was admitted without objection, although it is questionable whether it is admissible over an exception. I must, however, do the best I can with the evidence before me.

The determination of the state board of equalization embraces and has taken into account the conditions existing in the Fifth ward, as well as in other parts of the borough. I am convinced by the evidence that the assessment of real property in the borough is less than 87 per cent. of its actual value; but I cannot find evidence upon which I can base a finding of a specific lesser percentage. I have evidence of the conditions in the Fifth ward, but none that those conditions obtain elsewhere. For all that appears, property elsewhere in the borough may be assessed much nearer its real value, and the ratio prescribed by the state board of equalization may be based on the disparity found in the Fifth ward equalized over the county. I therefore hold that the

special franchise of the relator is assessed at a higher proportionate valuation than the assessment of other property on the same roll by the same officers, in that it is assessed at 100 per cent. of its value, while other property in Queens county is assessed at 87 per cent. of its real value, and that the relator is aggrieved and injured thereby to the extent of 13 per cent. of the taxes levied in the assessment. Any determination of a lesser percentage would be pure conjecture or guess. I have assumed that the defendants have assessed the special franchise of the relator, including the tangible property in the streets, at its actual value. I see no alternative to this assumption. It was their duty to so assess it, and I cannot find that they violated their duty without evidence. I see no force in the contention of the corporation counsel that evidence that the local assessors have not assessed real estate at its full value becomes, by some fiction, evidence that the state board have so acted with respect to the relator's special franchise.

The important findings of fact are that the assessment of the special franchise of the relator in the borough of Queens at the sum of $250,-000 is the actual value of such special franchise, including the tangible property in and under the streets, and that property generally in the county of Queens is assessed at 87 per cent. of its actual value. The important conclusions of law are that the question of inequality is determined with reference to the assessment of property in the borough of Queens, which is coterminous with the county of Queens, and that 13 per cent. should be deducted from the assessment of the special franchise.

As the reduction of the assessment is less than one-half of the amount claimed before the assessing officers, costs must be awarded against the petitioner. Tax Law, § 294.