THE PEOPLE ex rel. NATHAN B. WARREN et al., Respondents, v. EDWARD CARTER et al., Appellants.

In proceedings under the act of 1880 (Chap. 269, Laws of 1880) to reduce an assessment because of over-valuation, the conclusion of the court below that there was an over-valuation, if there is evidence to support it, is not reviewable here.

Under the provision in said act giving a remedy, where the valuation is unequal because made " at a higher proportionate valuation " than other property on the same assessment-roll, to entitle a property owner to a reduction from his assessment where an over-valuation is not established, it is not sufficient simply to show that some other property of the same description is valued on the same roll at a less proportionate value; it must also appear that, by reason of the under-valuation of the particular property with which his own is compared, the claimant will be injured, *i. e.*, compelled to pay more than his due share of the aggregate tax.

It is not material in this respect whether the assessment compared is of contiguous property or of similar property situated anywhere in the assessment district.

(Argued April 24, 1888; decided June 5, 1888.

1888.]   PEOPLE ex rel. WARREN et al. v. CARTER et al.   577

Statement of case.

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made November 15, 1887, which affirmed an order of Special Term reducing assessments on the real property of the relators, made in *certiorari* proceedings under chapter 269 of the Laws of 1880. (Reported below, 46 Hun, 444.)

The relators were assessed for the year 1886, in the city of Troy, upon three parcels of land, one parcel known as " River View," containing thirty acres, which was assessed at $60,500 ; lot 194, on the west side of Third street, on which were two houses numbered 47 and 49, assessed at $29,000, and a third parcel, containing ten acres, which was assessed at $12,000, but which latter assessment is not now in controversy. The relators, within fifteen days after the completion of the assessment-roll and its delivery to the comptroller, procured a writ of *certiorari* to be issued under the act of 1880, directed to the assessors of the city and to the comptroller, upon a petition, alleging, in substance, that the said several assessments were erroneous by reason of over-valuation and inequality.

In support of the allegation of inequality the petition sets forth that the lands of the relator were no more valuable than lands in close proximity thereto, while the assessment thereof was largely in excess of the assessment of such other lands. The allegations of over-valuation or inequality set forth in the petition, and incorporated in the writ issued thereunder, were fully denied in the return made to the writ, and the court, on the matter coming before it, appointed a referee to take the proofs, and on the coming in of his report the court decided that the assessment of the " River View " property was erroneous for over-valuation in the sum of $20,500, and reduced the amount from $60,500 to $40,000. The court also decided that the assessment of "lot 194 and houses 47 and 49, west side Third street," assessed at $29,000, was unequal " in that it had been made at a higher proportionate valuation than other real property on the same roll in immediate proximity thereto," and that the assessment on lot 194

should be reduced $3,900 to make it proportionately equal to the assessment on the lots immediately adjoining.

There was proof to sustain the finding of over-valuation in respect to the "River View" property. The only evidence to sustain the finding of inequality in the assessment of lot 194 was that the assessment of lot 193, adjoining, was relatively lower than the assessment on lot 194, and the court found that the inequality amounted to the sum of $3,900.

*R. A. Parmenter* for appellants. It was error to allow a witness to state his opinion as to the comparative value of one parcel of the relator's property, on the supposition that another parcel belonging to some other person had been valued by the assessors at any given sum. (*Color Printing Attachment Co.* v. *Brown,* 37 N. Y. 433; *Dolan* v. *Ætna Ins. Co.,* 29 Hun, 400, 401; *George* v. *Roberts,* 53 N. Y. 619; *Blanchard* v. *N. J. Steamboat Co.,* 59 id. 300; *Martin* v. *N. Y., N. H. & H. R. R. Co.,* 103 id. 626; *People* v. *Comrs. of Taxes,* 91 id. 603, 604; *People* v. *Davenport,* 91 id. 581.) The general assessors are not proper parties to this writ of *certiorari,* because when the writ was applied for, and allowed, the assessment-rolls had been delivered over, as required by law, to the comptroller, and the assessors had no possession, jurisdiction or control over the same. (*People* v. *Roddy,* 43 Barb. 539; *People* v. *Fredericks,* 48 id. 173; *People* v. *Delaney,* 49 N. Y. 655; *People* v. *Comrs. of Taxes,* 9 Hun, 609; *People* v. *Board of Assessors,* 16 id. 407; *People* v. *Tompkins,* 40 id. 228.) The writ of *certiorari* should not be sustained against the defendant John D. Spicer, as comptroller of the city of Troy, because on and after receiving the completed assessment-rolls from the assessors he had no authority to change or modify any valuation of property on said rolls. (Charter, Tit. 5, § 1; *People* v. *Tompkins,* 40 Hun, 228.)

*George B. Wellington* for respondents. In the absence of findings of fact in the case which contains testimony, but does not state that it contains all the evidence, and which was not

settled and signed by the trial court, it cannot be said that improper testimony, if there were any, influenced the trial court. (*People ex rel. Walkill Valley R. R. Co.* v. *Keaton,* 17 Abb. N. C. 369 ; *Foote* v. *Beecher,* 78 N. Y. 157.) As the roll is not in the possession of the officers, it is necessary to make the custodian of the roll a party to the proceeding, and hence the comptroller appears as a defendant. (*People ex rel. Bay State* v. *McLean,* 80 N. Y. 254.)

Andrews, J.   All real and personal estate in this state not specially exempted is, by law, liable to taxation upon an assessment at its full value.   The tax laws proceed upon the theory that all property protected by law should bear its equal share of the burden of taxation, and the statutory system, if exactly administered according to the letter of the statutes, would result in perfect equality of benefit and burden and none would have any just ground of complaint.   But no system system of taxation has as yet been devised which is capable of complete and perfect administration.   The ascertainment and valuation of property liable to taxation is, under our system, committed to a board of assessors.   In discharging their functions, mistakes or errors are liable to be committed, which prevent a perfect execution of the system of assessment.   It is known that a large amount of personal property escapes taxation either from the negligence of assessors or because its existence cannot be ascertained.   So, also, property may be listed which is not liable to assessment, or the assessors, from mistake, inadvertence or misjudgment, may place an erroneous valuation on property, either more or less than its actual value, thereby producing inequality of taxation. The act of 1880 deals with the subject of assessments in respect to illegality, over-valuation and inequality of valuation, and authorizes a review on *certiorari* at the instance of any person or corporation assessed who claims to have been aggrieved by an assessment in either of the respects mentioned.   The remedy afforded by the act, where the assessment is illegal or where there is an over-valuation, is

simple, practicable and complete. The question whether·
the assessment complained of is illegal presents purely a·
question of law on facts appearing on the assessment-roll,
or which may be readily ascertained by evidence. The
question of over-valuation is, in its nature, simple and free·
from complexity, and is solved, as is every other fact submitted
to a court for determination in case of conflict, by the weight.
and preponderance of evidence. The clause in the act of 1880,
which gives a remedy where the valuation "is unequal, in that.
the assessment has been made at a higher proportionate valua-
tion than other real and personal property on the same roll
by the same officers," presents a question of much greater·
difficulty. It is claimed, on the part of the relators, that, by
the true construction of this clause, it is sufficient, to entitle a·
property owner to a reduction of his assessment, that some other
property of the same description, real or personal, is valued on.
the same roll at a less proportionate value than his own. This
being established, it is claimed that the party claiming the bene-·
fit of the statute is entitled to a reduction of the valuation of·
his property to correspond with the valuation affixed by the
assessors on the property having such lower proportionate valua-
tion. We concur with Judge Parker in his dissenting opinion
below upon this point. The obvious result of the construc-
tion claimed by the relators, if adopted, would be, as is
pointed out by Judge Parker, that every property owner
whose property is assessed, could ·demand that the assessment.
of his property should be reduced to a valuation proportionate·
to the lowest valuation of any similar property on the assess-
ment roll, situate anywhere in the town or assessment district,
although his own property was not assessed beyond its actual
value, and although it was not made to appear that, by reason.
of the under-valuation of the particular property with which
it was compared, the claimant would be compelled to pay
more than his due share of the aggregate tax. In the nature
of things, it is impossible that all valuations should represent
the precise actual value of the property valued. If a par-
ticular piece of property on an assessment-roll is under-valued,.

another may be correspondingly over-valued. Where there is no over-valuation of his own property, it does not follow that the taxpayer will be injured by an under-valuation of some piece of property belonging to another. If all the valuations on the assessment-roll, other than that of the party complaining, were proportionately equal, and also proportionately lower than the valuation of his property, injury to the claimant might, perhaps, be a just inference. The mere fact that the claimant can show that his land is assessed proportionately higher than a certain other piece on the same roll does not alone show that he is aggrieved, or that he will be compelled to pay more than his just share of the aggregate tax. By the terms of the act of 1880, it must be made to appear that the party seeking the remedy afforded thereby " is, or will be, injured by the alleged illegal, erroneous or unequal assessment " of which he complains. The adoption of the construction of the act of 1880, contended for by the relator, would greatly embarrass the collection of taxes and lead to burdensome litigation, while at the same time it would award relief in many and probably in most cases where no real right was infringed, nor an actual injury suffered. Those property owners who were alert and prompt to avail themselves of the act, would succeed in shifting a part of the burden of taxation from their own shoulders and casting it upon those less vigilant and active. Where the assessors in a particular case depart from a general rule or ratio of assessment which they have adopted, to the injury of the taxpayer in the particular case, the statute affords a remedy. Without undertaking to define the precise scope of the remedy for disproportionate valuations of property, given by the act of 1880, we think it may be safely said that the petitioner must show a state of facts from which a presumption justly arises that the inequality of which he complains will subject him to the payment of more than his just proportion of the aggregate tax, and that this presumption is not raised by proof that in a particular instance property is assessed at a proportionately lower valuation than

his own.    Nor does it, we think, make any difference that the assessments compared were of contiguous property.    The object of the statute was to afford a remedy to a party injured by unequal valuations, not to enable him, on mere proof of a mistake or misjudgment of the assessors, as to the relative valuation of his property and that of another, to have his assessment reduced, although his own property was not over-valued, and it does not appear, taking into view the aggregate assessment and valuation of the taxable property on the roll, that he will be compelled to pay more than his just share of the tax.

The conclusion of the court below that there was an over-valuation of the property known as " River View," is supported by evidence, and is not reviewable in this court. (*People ex rel. R. W. & O. R. R. Co.* v. *Hicks*, 105 N. Y. 198, 200.)    The order, so far as it relates to that property, should be affirmed.

That part of the order relating to the assessment on lot No. 194 West Third street should be reversed.    The court did not sustain the claim of over-valuation in respect to that lot, but reduced the assessment on the ground of disproportionate valuation as between lot 194 and lot 193.    This ground, as we have held, is untenable.

The order of the General Term should be affirmed as to " River View" property, and the order of the Special and General Terms as to the assessment on lot 194 should be reversed.

All concur.

Ordered accordingly.