PEOPLE *ex rel.* WEST SHORE R. CO. *v.* ADAMS *et al.*

(*Supreme Court, General Term, Fourth Department.* May 2, 1890.)

1. TAXATION—ASSESSMENT—POWERS OF ASSESSORS.
   Under charter of the village of Little Falls, § 39, as amended by Laws 1873, c. 158, the village trustees, thereby constituted a board of assessment, whose duty it is to copy from the last assessment roll of the several towns which comprise the territory of the village the names and valuations of persons and property taxable in the village, are not bound to adopt the valuations made by the town assessors, but may, in the exercise of their judgment, increase such valuations for the purpose of village taxation.

2. SAME—OVERVALUATION—EVIDENCE.
   The assessment will not be disturbed unless the party seeking to reduce it shows by clear and satisfactory evidence that the property was overvalued.

3. SAME—ASSESSMENT—VERIFICATION.
   The village trustees are not required by the charter, § 41, to verify their assessment in the manner prescribed for the town assessors, and the absence of such verification does not invalidate the assessment.

4. SAME—IMMATERIAL ERROR.
   When the valuation is not made by the acre, a mistake as to the quantity of land included in the assessment does not affect the rights of the parties, and is immaterial.

Appeal from special term, Herkimer county.

Petition by the West Shore Railroad Company against the trustees of the village of Little Falls to have an assessment reduced. This was a proceeding by writ of *certiorari*, under the provisions of chapter 269 of the Laws of 1880, to review an assessment against the relator made in 1886 by the defendants, as trustees of the village of Little Falls. Section 39 of the charter of that village (chapter 330 of 1850, as amended by chapter 158 of 1873) is as follows: "Sec. 39. The trustees shall constitute the board of assessment of the village for the purpose of valuation and taxes. The trustees shall cause to be copied from the last assessment roll of the several towns, parts of which comprise the territory of said village, the names and valuations of all persons and corporations taxable within the village, as made by the town assessors, and the same shall be deposited with the clerk of the board or one of the trustees, subject to inspection by any person interested. The trustees shall thereupon cause public notice to be given, subscribed by the president and clerk, and published for two successive weeks in all the newspapers published and printed in said village, stating where the roll is deposited for inspection, and designating a time and place, at least two weeks after the first publication of such notice, where and when the trustees will hear any objections, and make corrections of said assessment roll and valuation. The said town valuation shall be adopted by the trustees for the valuation of the property thereon within the village, subject to be assessed for village taxes, as far as practicable, subject, however, to be corrected of any errors which may appear thereon, or

for any change of ownership of property, or for increased value by reason of improvements, or for diminished value by reason of fire or damage by flood, and subject to have the names of persons added or omitted, with valuations accordingly as changes have taken place, or where names or property have been omitted which are subject to taxation, and may reduce or add to the valuation; and the trustees are hereby invested with the same powers within said village in respect to valuation and assessment of taxes, including the power to administer oaths, as town assessors have in respect to the valuation and assessment in towns." Section 41, as amended by chapter 49 of 1858, is as follows: "Sec. 41. Upon the completion of the assessment roll of the valuation, the trustees must cause the amount authorized to be raised, or so much thereof as they may deem necessary, to be apportioned according to the valuation, and to have the several sums so apportioned set opposite the valuation, in the same manner as required for town and county tax-lists, and the same shall thereupon be adopted by a resolution of the trustees, and shall be certified by the president, and deposited in the office of the clerk of the village." The special term made an order reducing the assessment from $40,000 to $18,661. The trustees appeal.

Argued before HARDIN, P. J., and MERWIN and MARTIN, JJ.

*Myron G. Bronner,* for appellants. *William E. Lewis,* for respondent.

MERWIN, J. The property of the relator that was within the village of Little Falls was partly in the town of Little Falls, and partly in the town of Danube. The assessment against relator in 1885 in the town of Little Falls was $40,000, and in the town of Danube was $60,000. The assessment roll in Little Falls for that year also stated that the valuation of that portion of the property that was in school-district No. 1 was $15,000. The roll for Danube for that year was not in evidence, but it was shown by one of the assessors that the valuation of that portion within school-district No. 1 of Little Falls was placed by the assessors at $3,661. It was also shown that school-district No. 1 comprised all the territory of said towns that was within the village. The total of these valuations, being $18,661, was held at the special term to be the proper valuation. The claim of the relator is that the defendants were bound to adopt these valuations. These school-district valuations were apparently made in pursuance of chapter 694 of the Laws of 1867, as amended in 1884, entitled "An act in relation to the valuation of the property of railroad companies in school-districts for the purpose of taxation." Under this act it was the duty of town assessors, "within fifteen days after the completion of their annual assessment list, to apportion the valuation of the property of each railroad company, as appears on such assessment list, among the several school-districts in their town in which any portion of said property is situated, giving to each of said districts their proper portion according to the proportion that the value of said property in each of such districts bears to the value of the whole thereof in said town.". This apportionment was to be in writing, and signed by the assessors, and filed with the town-clerk, and "the amount so apportioned to each district shall be the valuation of the property of each of said companies, on which all taxes against said companies in and for said districts shall be levied and assessed until the next annual assessment and apportionment." If the assessors neglected to make this apportionment, then the supervisor must do it, upon request of the trustees of the school-district. Very clearly, this act had reference only to school-district taxation. The apportionment was not a part of the assessment roll. The defendants were not bound by any action of the town assessors on this subject. They were only required to adopt, as far as practicable, the valuation properly appearing upon the assessment roll. Besides, under the charter, (section 39,) as amended in 1873, they were expressly given the power to "reduce or add to the valuation." This power was inserted in 1873, and, although inarti-

ficially expressed, is broad enough to cover a case like the present. It seems, therefore, reasonably clear that the defendants were not bound to adopt the apportionment made by the town assessors, but had power to make the assessment in question upon valuation of their own. That being so, it is incumbent on the relator to show it to be excessive.

In *People* v. *Davenport*, 91 N. Y. 574, it is said that a party assailing an assessment as excessive must make it appear conclusively that the method by which the assessors arrived at the result complained of was incorrect, and that the assessment does not represent the fair value of the property assessed. In the present case there is no satisfactory evidence as to the real value of the relator's property. The main elements on the question of value do not appear. The contest was not over that subject. Some of the defendants, called by the relator as witnesses, testified that the valuation as fixed by them was a full and fair valuation as compared with other property, while others said it was the fair value as compared with the assessment against the Central Railroad. The evidence warrants the conclusion that the amount named in the roll was finally adopted and fixed upon by the trustees as the actual fair and true value of the relator's property as compared with other property in said village. It was known that in four instances the assessments against individuals were greatly disproportionate to the actual value. Not enough was shown to fix any rule on that subject available to the relator, especially in view of the unsatisfactory character of the evidence as to the actual value of relator's property. *People* v. *Carter*, 109 N. Y. 576, 17 N. E. Rep. 222. I am therefore of the opinion that the relator failed to furnish a sufficient basis for relief as to the amount of the assessment.

But it is said that the assessment was void because not verified by the trustees in the form prescribed for town assessors. Concededly, there was no such verification. The statute, however, under which the trustees acted, did not require it. It did provide (section 41) that upon completion of the roll it should "be adopted by a resolution of the trustees, and shall be certified by the president, and deposited in the office of the clerk of the village." No other verification was required.

It is further claimed that the assessment is erroneous by reason of misstatements as to quantity of land. The assessment is for 45.57 acres, while in fact there is only about 20. This is not specified in the petition as one of the grounds of illegality. It was evidently a mistake in copying from the town roll. The valuation was not by the acre. The quantity named was immaterial, so far as the rights of any of the parties are concerned. The error on this subject is not a sufficient basis for relief.

It follows that the order reducing the assessment should be reversed, and the prayer of the petitioner denied. Order entered July 3, 1889, reversed, with $10 costs and disbursements, and prayer of petitioner denied, with costs against the petitioner as upon the trial of an issue of fact in the supreme court. Appeal from order entered November 8, 1889, dismissed, without costs.

MARTIN, J., concurs.

HARDIN, P. J. Section 39 of the charter of the village of Little Falls was amended by chapter 158 of the Laws of 1873, and it confers upon the trustees, as a board of assessment, powers with respect to assessments of property in the village liable to taxation. By the section (1) it is made the duty of the trustees, as a "board of assessment," to "cause to be copied from the last assessment roll of the several towns, parts of which comprise the territory of said village, the names and valuations of all persons and corporations taxable within the village, as made by the town assessors." (2) It is made the duty of the board, after such copy has been made, to deposit it with the clerk of

the board or one of the trustees, subject to inspection by any person interested. (3) It is the duty of the trustees to cause a public notice to be given, subscribed by the president and clerk, and published for two successive weeks in all the newspapers printed and published in the village, stating where the roll is deposited for inspection, and designating a time and place, at least two weeks after the first publication of said notice, where and when the trustees will hear any "objections, and make corrections of said assessment roll and valuation." By the words just quoted, it is apparent that the statute requires the "assessment roll and valuation" as taken from the town assessors to be used as the basis upon which further action may be had by the trustees. The subsequent language of the section clearly carries out this idea, for it prescribes in terms, viz.: "The said town valuations shall be adopted by the trustees for the valuation of the property thereon with the village, subject to be assessed for village taxes, as far as practicable, subject, however, to be corrected of any errors which may appear thereon, or for any change of ownership of property, or for increased value by reason of improvements, or for diminished value by reason of fire or damage by flood, and subject to have the names of persons added or omitted, with valuations accordingly as changes have taken place, or where names or property have been omitted which are subject to taxation, and may reduce or add to the valuation; and the trustees are hereby invested with the same powers within said village, in respect to valuation and assessment of taxes, including the power to administer oaths, as town assessors have in respect to the valuation and assessment in towns."

It is quite apparent from the language just quoted that the trustees are not required to adopt the exact state of facts found upon the assessment rolls of the towns of Danube, Manheim, and Little Falls, so far as they relate to the property within the corporate limits of the village. It is impossible to do so, because, in the assessment found in the three towns against either of the railroads passing through the village, property lying beyond the corporate limits of the village is embraced; hence it becomes the duty of the trustees to exercise a discretion conferred upon them by the words, "as far as practicable," found in the section. Such discretion seems to have been exercised by the board of assessment in each of the cases brought in review in respect to the valuation of the relator's property in the years 1886 and 1887. Such board had jurisdiction of the subject-matter, and was called upon to exercise the power conferred upon the board in respect to the property of the relator. It is not apparent that the board was given power to increase the valuation of the relator's property, or of any other tax-payer's property, beyond the limits mentioned in the section. The first general limitation found in the section is the sum at which the property has been assessed by the several town officers. The second limitation or restriction is to property that has an "increased value by reason of improvements." The power to reduce seems to be limited to such property as has a "diminished value by reason of fire or damage by flood." A further qualified power has been given to the trustees, as a board of assessment, to add to the action of the several town assessors names of persons omitted from the assessment rolls, with proper valuations in respect thereto. It seems that the section confers the power to "reduce or add to the valuation" only in the exceptional cases mentioned in the section. When the trustees, as a board of assessment, found it impracticable to follow the exact figures found upon the assessment roll in regard to the relator's property in the town of Danube and in the town of Little Falls, it became their duty to fix a valuation upon the property for the purposes of an assessment in the corporate limits of the village. In reaching such a valuation, they had the right to make an actual inspection of the property of the relator, to exercise their judgment in respect to its value, and to form a conclusion upon all the *data* accessible to them as to the proper amount in which it should

be assessed. Presumptively, their action was in accordance with the facts and circumstances surrounding the property. Indeed, such seems to be very apparent from some of the evidence found in the appeal book. In seeking to overturn such an assessment thus made by the trustees, it was within the power of the relator to furnish clear, persuasive, and satisfactory evidence that the action of the board of assessors was improper and unjust. Some evidence was given tending to such a conclusion. No evidence, however, was given of "the cost of creating" of the relator's property through the corporate limits of the village. Such evidence was held proper in *People* v. *Weaver*, 34 Hun, 321. Nor was any evidence given "of the earning capacity of the railroad." Such evidence was held to be proper in *People* v. *Keator*, 36 Hun, 592. The relator seems to have relied largely upon the circumstance that 2 or 3 pieces of property singled out from a list of over 1,400 found upon the assessment roll were assessed at sums less than their value as expressed by witnesses produced upon the hearing. That evidence, under the rule which has been adopted in regard to the proceedings under chapter 269 of the Laws of 1880, is not sufficient to overturn the judgment of the trustees acting as a board of assessment. In *People* v. *Carter*, 109 N. Y. 582, 17 N. E. Rep. 222, ANDREWS, J., said: "The object of the statute was to afford a remedy to a party injured by unequal valuations; not to enable him, on mere proof of a mistake or misjudgment of the assessors as to the relative valuation of his property and that of another, to have his assessment reduced, although his own property was not overvalued, and it does not appear, taking into view the aggregate assessment and valuation of the taxable property on the roll, that he will be compelled to pay more than his just share of the tax." That case was approved in *People* v. *Christie*, 115 N. Y. 162, 21 N. E. Rep. 1024. In the latter case it was assumed "that the properties selected out from the roll by mutual agreement, and used without objection as the basis of comparison, did fairly represent the proportionate rate of assessment of the property of the town, and so serve as a correct basis for comparison."

In the case in hand no such assumption was made. The contrary was claimed by the defendants. Much evidence was given upon the hearing relative to the valuation of the property of the New York Central. Upon a careful inspection of that evidence, considering all the facts and circumstances surrounding the property of that corporation within the village limits, and a careful inspection of all the evidence relating to and circumstances surrounding the property of the relator within the corporate limits, does not lead to the conclusion that the trustees, in making the valuations complained of, placed the property of the relator upon the assessment roll at a sum disproportionate to the sum of $190,000 of the New York Central. After a careful consideration of all the evidence found in the appeal book, I am of the opinion that the court at special term, upon the hearing upon a *certiorari*, under the act of 1880, was not warranted in determining that the assessment of the relator "is erroneous by reason of overvaluation, or is unequal in that the assessment has been made at a higher proportionate valuation than other real or personal property on the same roll."

Upon the other questions presented by the appeal, I concur in the opinion of MERWIN, J., for the reasons therein assigned, and favor a reversal of the determination of the special term, and the denial of the petition, with costs against the relator. See section 6, c. 269, Laws 1880; *People* v. *Parker*, 45 Hun, 436.