THE PEOPLE OF THE STATE OF NEW YORK ex rel. JESSIE C. HAGY, Individually and as Executrix of ROBERT M. CHALMERS, Deceased, Respondent, against RICHARD J. LEWIS, as Commissioner of Assessments of the City of Albany, et al., Appellants.

Argued February 23, 1939; decided April 11, 1939.

*Joseph J. Casey, Corporation Counsel,* for appellants. The two types of inequality testimony should be considered together. (*New York Railways Co.* v. *City of New York,* 218 N. Y. 483; *People ex rel. Standard Oil Co.* v. *Saxe,* 179 App. Div. 721; 222 N. Y. 545; *Freeman* v. *Freeman,* 126 App. Div. 601; *Matter of Emerson* v. *Buck,* 230 N. Y. 380.)

*Ernest B. Morris* and *William E. Woollard* for respondent. To determine fairly the percentage of inequality, total assessments should be compared with total market values. (*People ex rel. Warren* v. *Carker,* 109 N. Y. 576; *People ex rel. Stuart* v. *Feitner,* 53 Misc. Rep. 334.) The courts below properly disregarded the list of conveyances in ascertaining the extent of inequality. (*People ex rel. Mayor* v. *McCarthy,* 102 N. Y. 630.)

LOUGHRAN, J. This is a certiorari proceeding brought under article 13 of the Tax Law (Cons. Laws, ch. 60) to review the assessment of 37 North Pearl street in the city of Albany for the purposes of taxation for the year 1937. The premises were assessed at $312,000.

It was alleged by the relator that the assessment was both erroneous by reason of overvaluation and unequal in that it had been made at a higher proportionate valuation than the assessment of other property on the same roll by the same officers. (See Tax Law, § 290.) The issue as to overvaluation has been settled by the finding of the courts below that the premises had a full value of $160,000. Our jurisdiction is invoked only in respect of the issue of inequality.

Section 293 of the Tax Law empowers the court to correct an unequal assessment so as to " make it conform to the valuations and assessments of other property upon the same roll and secure equality of assessment." It also provides: " Upon the hearing the parties to the proceeding may mutually agree on parcels of real estate to be valued \* \* \*. But in case the parties fail to agree on a selection of parcels to be valued \* \* \* then upon application of either party the court or referee shall \* \* \* select the parcels that shall be valued without reference to their assessed values, and both parties shall be limited in their proof on the trial to \* \* \* the parcels so selected, except that evidence as to actual sales of real property within the tax district that occurred during the year in which the assessment under review was made may be given by either party."

Conformably to this provision, the relator and the city each submitted a list of parcels for valuation, and the referee picked out six parcels from either list. The assessed valuation and the found full value of each of these twelve parcels were as follows:

|  | Assessment | Full Value |
|---|---|---|
| 341 South Pearl street | $2,000 | $3,000 00 |
| 600 South Pearl street | 2,000 | 6,000 00 |
| 120 Hudson avenue | 20,000 | 35,000 00 |
| 218 Western avenue | 26,000 | 60,000 00 |
| 178 Morton avenue | 6,500 | 9,000 00 |
| 210 Loudonville road | 10,000 | 25,000 00 |
| 41 Catherine street | 2,500 | 2,769 30 |
| 453 Myrtle avenue | 10,100 | 8,790 00 |
| 9 Lawnridge avenue | 10,000 | 9,000 00 |
| 83 Columbia street | 8,000 | 6,988 00 |
| 485 Myrtle avenue | 10,000 | 8,980 00 |
| 30 Market street | 8,500 | 8,122 80 |
|  | $115,600 | $182,649 50 |

This total of assessed valuations ($115,600) was divided by the total of these full valuations ($182,649.80), and the result (63.2 per cent, or, for easy figuring, 64 per cent), was adopted by the courts below as the percentage of full value at which real property in the city was assessed in general. The assessment under review was accordingly put at $102,400, or 64 per cent of the found full value of $160,000. The same arithmetical process had been employed in an unreported case decided by Mr. Justice BERGAN on which the relator relied.

In another unreported case, Mr. Justice FOSTER had held this procedure to be erroneous. He said: " The average rate of assessment, using a given number of parcels, cannot be properly determined in this manner, because by adding large value parcels to one side and small value parcels to the other, the apparent rate can be made smaller and smaller, even though the actual rate percentage remains the same. Thus if we take two parcels, one worth $2,000 and assessed at $1,000, the other worth $40,000 and assessed at $10,000, the first ratio is 50 per cent, and the second 25 per cent. The average is 37½ per cent. But if we divide the total valuations the percentage is only slightly in excess of 26 per cent." This viewpoint is adopted by the city. As appellant here, it contends that the assessed valuation of the relator's property should have been measured by an average rate of assessment arrived at by finding the ratio of assessed valuation to full value of each parcel and dividing the sum of such percentages by the number of parcels. Had this been done the ratio of the assessed valuation of the relator's property to its found full value would have come to 80 per cent instead of 64 per cent, with the result that the assessment in question would have been made $128,960 instead of $102,400 — a difference of $25,600, or 16 per cent.

We think all this presents no question of law.

The equalizing method used by the courts below may perchance give effect to lopsidedness of the sort pointed out by Mr. Justice FOSTER. But this possibility seems to us

to be so remote as to be negligible in the ordinary case. The statute does not constrain either litigant to accept a selection of parcels loaded against his interests. When the parties agree on the parcels to be valued it is to be presumed that inordinate diversities have been excluded. In the absence of such agreement the selection is made by the court or by the referee, and then (unless the contrary be shown) it is to be presumed that judicial fairness is a guaranty that the parcels chosen also fairly exhibit a cross-section of the situation that exists throughout a tax district. Thus the idea of the statute appears to be that a sufficiently approximate arithmetical mean can be established by pooling a number of parcels (so selected) and comparing the aggregate of their assessed valuations with the aggregate of their full values. Apparently this was the view of the courts below. We cannot say that such a process is inadequate for practical attainment of the rough equality which is all that has heretofore been possible under any system of taxation. Nor is the claimed superiority of the city's average-rate-of-assessment formula necessarily proved by mere multiple comparison of single parcels with other single parcels. As we all know, there are in almost every community peculiar standards of value indigenous to particular locations.

A remaining question may be more shortly disposed of. The referee declined to consider records offered by the city to show actual sales of real property in the tax district during the year 1937. This data was fragmentary and in a number of instances lacked positive authentication. That it was not so proximately relevant as to be persuasive was decided by an exercise of discretion which we cannot canvass.

The order should be affirmed, with costs

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS and FINCH, JJ., concur; RIPPEY, J., dissents on the ground that as a matter of law the selection and method of comparison adopted were arbitrary and unreasonable and failed to reflect the situation throughout the tax district.

Order affirmed.