THE PEOPLE OF THE STATE OF NEW YORK ex rel. TEN BROECK APARTMENTS CORPORATION, Relator, against RICHARD J. KINNAW, as Commissioner of Assessment and Taxation of the City of Albany, et al., Respondents.

Supreme Court, Special Term, Albany County, December 16, 1949.

*Rollin B. Sanford* for relator.

*James J. McGuiness, Corporation Counsel (Harold E. Blodgett* of counsel), for respondents.

BOOKSTEIN, J. Relator moves to confirm the report of the Referee in certiorari proceedings to review the assessments for the years 1947 and 1948, of its real property, 399 State Street, Albany, New York, known as the Ten Broeck Apartments. Respondents oppose confirmation.

The total assessments of land and building were $350,000 for the year 1947 and $400,000 for the year 1948.

The learned Referee has determined that the assessment for 1947 should be reduced to $200,000 and for 1948 to $225,000.

Relator called two expert witnesses as did the respondents.

The ultimate opinions of these witnesses may be summarized as follows:

Market value of property on the basis of capitalization of actual net income and a 6% return:

|  | *Relator's Experts* | |
|---|---|---|
|  | *1947* | *1948* |
| Scott | $149,300 | $149,300 |
| McCabe | 150,000 | 80,000 |

|  | *Respondents' Experts* | |
|---|---|---|
|  | *1947* | *1948* |
| Clemenshaw | $119,000 | $119,000 |
| Farrington | 100,000 | 140,000 |

Thus, on what would seem to be so simple a matter, there is a substantial variance between the experts on the values on the capitalization of net income basis. On that basis, the

experts for the property owner give a higher valuation than do the experts for the city. The figures vary from a low of $80,000 given for 1948 by one of the relator's experts to a high of $150,000 given for both 1947 and 1948 by one of the property owner's experts.

That the learned Referee did not base his conclusion as to fair full value solely on the capitalization of income method is best attested by the fact that he found the full value both for 1947 and 1948 to be $260,000.

Value on the basis of reconstruction cost, less depreciation:

|  | Relator's Experts | |
|---|---|---|
|  | 1947 | 1948 |
| Scott — Building | $450,000 | $450,000 |
| Scott — Land | 30,000 | 30,000 |
| Scott — Total | $480,000 | $480,000 |
|  | 1947 | 1948 |
| McCabe — Building (only) | $357,000 | $357,000 |
|  | Respondents' Experts | |
|  | 1947 | 1948 |
| Farrington — Building | $375,000 | $375,000 |
| Farrington — Land | 25,000 | 25,000 |
| Farrington — Total | $400,000 | $400,000 |
|  | 1947 | 1948 |
| Clemenshaw — Building | $391,751 | $391,751 |
| Clemenshaw — Land | 32,350 | 32,350 |
| Clemenshaw — Total | $424,101 | $424,101 |

On land and building on this basis there is a variation between the highest figure given by the property owner's expert Scott of $480,000 and the low of $400,000 given by the city's expert, Farrington. For the purpose of this comparison, the value given by McCabe is not considered, as he expressed no opinion on land value.

The learned Referee properly did not adopt the figures arrived at by any of the experts, solely on the basis of reconstruction cost less depreciation, as other factors must be considered.

In determining value for the purpose of assessment, the following elements must be considered: bona fide sales, capitalized value based on actual income, type of construction, suitability for use, obsolescence, location, business conditions, and sales

and value of other property in the vicinity. (*People ex rel. Bingham Operating Corp.* v. *Eyrich,* 61 N. Y. S. 2d 679, affd. 270 App. Div. 1063.)

Indeed, the witness Farrington testified that capitalization of income affects value; yet he gave $400,000 as the reconstruction value less depreciation and subsequently gave the same value after taking into consideration all factors. Obviously, he gave no effect to the factor of capitalization of income, since if he did, his own value on that basis would necessarily have to effect a reduction in the figure of $400,000 arrived at as cost less depreciation.

Full market value, considering the capitalization of income basis, reconstruction cost, less depreciation and other factors:

|  | Relator's Experts | |
| --- | --- | --- |
|  | 1947 | 1948 |
| Scott | $260,000 | $260,000 |
| McCabe | 150,000 | 150,000 |

|  | Respondents' Experts | |
| --- | --- | --- |
|  | 1947 | 1948 |
| Farrington | $400,000 | $400,000 |
| Clemenshaw | 306,576 | 306,576 |

Here there is a variation between the experts of a low of $150,000 by the property owner's expert McCabe and a high of $400,000 by the city's expert Farrington.

Farrington's figure is the precise figure for which the property was assessed by the city for 1948, to wit, $400,000. Even the testimony of the city's expert Clemenshaw shows a $400,000 assessment to be excessive by nearly $100,000. The precise excess is $93,424.

On this basis the smallest difference is between the property owner's expert, Scott, and the city's expert, Clemenshaw, whose figure is $46,576 higher than Scott's.

The learned Referee found the true full value to be $260,000 for each of the years 1947 and 1948; in other words he adopted the value fixed by the property owner's expert, Scott. Respondents urge that the Clemenshaw figure be adopted, which would result in an assessment higher by $46,576 than that found by the Referee.

On the mass of conflicting evidence and expert opinions, there is no basis for this court to say that the trier of the facts made any error in arriving at the Scott figure rather than the Clemenshaw figure.

The learned Referee is an attorney of conscience, character and capacity and was appointed as Referee by a member of this court, Mr. Justice ELSWORTH. He resides in Kingston and, in that sense, is a "stranger to the community" of Albany and, obviously, to borrow a phrase from respondents' brief, did not subject Clemenshaw "to that local prejudice with which provincials regard men of large affairs", because of the fact that Clemenshaw is a resident of Ohio.

It may be that he gave greater weight to Scott's opinion than to Clemenshaw's because of the fact that the latter is a resident of Ohio while Scott is a native Albanian and has greater familiarity with real property in the city of Albany. Whether he did or not, this court cannot say. If that was an element in his weighing the testimony and its value, it was entirely and properly within his province, as the trier of the facts, to do so.

Having arrived at a full value of $260,000, the Referee found that real property generally in the city of Albany is assessed at 72% of its full value. Applying that rate to the full value of $260,000, would result in an assessed value of $187,000, in round figures, for both years. The Referee, however, instead of finally fixing the assessment at that figure for each of the years 1947 and 1948, fixed it for 1947 at $200,000 and for 1948 at $225,000, for the reason that the protests filed for such years sought a reduction to those amounts respectively, and the amounts cannot be fixed by the Referee at a lower sum than that demanded.

Respondents argue that there is a "startling" variance between the *72% rate of inequality* found by the Referee and the *96% rate of equalization* found by the Board of Supervisors.

If, indeed, the variance is "startling", the fault does not lie with the Referee. He followed religiously the formula employed by Mr. Justice BERGAN, a formula which was approved by the Court of Appeals in *People ex rel. Hagy* v. *Lewis* (280 N. Y. 184 [1939]) in which the present Chief Judge, JOHN T. LOUGHRAN, wrote the opinion approving a finding by the Referee of a *64% rate* of inequality in the 1937 assessment roll of the city of Albany and in which the formula employed by Mr. Justice BERGAN was expressly referred to and approved.

How was the rate of inequality arrived at? The method followed was neither new nor novel; rather, it was the regular and normal method.

Section 293 of the Tax Law permits each party to submit a limited number of parcels of property for comparison purposes. The parties agreed on the submission by each of six specified parcels, which left twelve parcels for a comparison test.

The parcels selected by each of the parties, the assessed value thereof, the respective experts' opinions of value thereof and the Referee's findings of the value of each are set forth in the following table:

| Property Owner's Parcels | Assessment | Valuation by Property Owner's Expert | Valuation by City's Expert | Full Value Found by Referee |
|---|---|---|---|---|
| 35 Marwood St............... | $4,300 | $14,750 | $10,442 | $12,500 |
| 53 No. Pearl St.<br>36 James St. } ............ | 385,000 | 752,000 | 683,860 | 700,000 |
| 103 Rensselaer Ave........... | 5,000 | 17,500 | 11,661 | 15,000 |
| 483 Clinton Ave.............. | 4,000 | 10,500 | 5,910 | 8,500 |
| 155 Brevator St.............. | 7,300 | 18,200 | 13,550 | 16,000 |
| 14 Frost Place............... | 3,500 | 9,600 | 5,910 | 8,500 |
| Totals................... | $409,100 | $822,550 | $731,333 | $760,500 |
| City's Parcels | | | | |
| 16 Magnolia Ter............. | $9,800 | No | $9,461 | $9,461 |
| 87 Arch Street............... | 26,500 | Testimony | 26,500 | 26,500 |
| 120 State Street.............. | 385,000 | by | 390,178 | 390,178 |
| 1260 Broadway.............. | 55,000 | Property | 47,080 | 47,080 |
| 231 Madison Avenue.......... | 9,000 | Owner's | 9,076 | 9,076 |
| 821 Central Avenue........... | 10,500 | Experts | 15,250 | 15,250 |
| Totals................... | $ 95,800 | ........ | $497,545 | $497,545 |
| Grand Totals of Assessment and Values found by Referee... | $904,900 | ........ | .......... | $1,258,045 |

Thus it will be seen that the six parcels submitted for comparison by the city have a total assessment of $495,800. The taxpayer's expert gave no opinion of value on these. The city's experts gave a total value of $497,545 or $1,745 over 100%, which the Referee adopted.

As to the taxpayer's parcels, the total assessment was $409,100. The city's expert gave a total value of $731,333 or a valuation of $322,233 more than the assessed valuation; the taxpayer's expert gave a total value of $822,550 or a valuation of $413,450 more than the assessed valuation; the mean average between the values found by the two experts is

$776,941 and the Referee found the full value to be $16,441 less than that, to wit $760,500 or $351,400 more than the assessed value.

The percentage of inequality based on the taxpayer's parcels above are as follows: taxpayer's expert about 49%; city's expert about 56%; Referee's finding about 54%.

Based on the city's parcels, there is practically no inequality, the full value being only slightly in excess of the assessed value.

However, following the BERGAN method, the Referee has properly totaled the assessed value of all of the parcels submitted by both the city and the taxpayer and has likewise totaled the full value found by him of all of the parcels and applying to both those totals the same mathematical formula as was hereinabove applied to the city's parcels and to the taxpayer's parcels separately, the result is a 72% rate of inequality, between assessed value and full value.

Respondents urge that the Referee failed to give due weight to the equalization rate of the Board of Supervisors of 96%.

The certificate of an equalization rate is admissible and is some evidence on the issue of inequality. (*People ex rel. Bingham Operating Corp.* v. *Eyrick,* 186 Misc. 434.) At page 437, in that case, Justice SANTRY ruled the certificate admissible upon the assumption that an official board establishing such a ratio, did so after an investigation into the facts.

Joseph M. Hughes, chairman of the Committee on Equalization of the Albany County Board of Supervisors, was called as a witness by relator. His testimony clearly shows that the equalization rate fixed by the Board of Supervisors had no basis whatsoever in any investigation into the facts and that the rate was fixed by the simple process of adopting the previous year's rate; that that practice was followed year after year back to a year for which the witness had no knowledge of how the equalization rate was arrived at.

An equalization rate thus established certainly need not be adopted by a referee.

In *People ex rel. Syracuse Trust Co.* v. *Matt* (258 App. Div. 853), Special Term overruled the Referee, who found that property generally in Utica was assessed at 100% of value and found the inequality to be the 65% rate of equalization fixed by the Oneida County Board of Supervisors for the City of Utica. The Appellate Division disapproved such a finding and reinstated the finding of the Referee which had ignored or given little or no weight to the equalization rate. The Court of

Appeals modified the Appellate Division in *People ex rel. Syracuse Trust Co.* v. *Matt* (283 N. Y. 241) and said: "We agree with the Appellate Division in its disposition of the question raised as to the applicability of the equalization rate." In that case, the corporation counsel, representing the city, successfully argued that "Equalization by the County Board of Equalization so that all towns and cities of Oneida County will bear their just, proportionate share of State and county taxes was never intended to change the Tax Law * * * requiring city assessors to assess at full and true value ". (*People ex rel. Syracuse Trust Co.* v. *Matt, supra,* p. 242–243.)

Thus there is an unmistakable holding by the highest court in this State that an inequality rate in assessments may bear no resemblance or relation to an equalization rate of the County Board of Supervisors, since in the *Syracuse Trust Co.,* case (*supra*) the court held that property generally for the year in question in the city of Utica was assessed at 100% of its value, despite the equalization rate of 65% fixed by the Board of Supervisors.

Patently, the converse is also true. Hence, in spite of a county Board of Supervisors' equalization rate of 96%, there can be inequality in assessments whereby property generally is assessed at only 72% of its full value. And, in this case, the Referee has so found on ample evidence.

In view of the clear and convincing evidence of inequality made pursuant to section 293 of the Tax Law, the Referee was well warranted in giving little or no weight to the equalization rate of the Board of Supervisors.

The findings and conclusions of the Referee reducing the 1947 assessment from $350,000 to $200,000 and the 1948 assessment from $400,000 to $225,000 are amply justified by the evidence.

Motion to confirm the Referee's report is granted.

Decision and judgment in each case signed and costs taxed in each case.