In the Matter of RICHARD L. WOLF, Respondent, against ASSESSORS OF THE TOWN OF HANOVER, COUNTY OF CHAUTAUQUA, NEW YORK, Appellants. (Two Proceedings.)

Submitted February 25, 1955; decided April 21, 1955.

*Robert P. Galloway* and *Glenn W. Woodin* for appellants. I. The proceedings should be remitted to Special Term for compliance with the provisions of section 293 of the Tax Law. (*Matter of Bapps Corp.* v. *Board of Assessors of City of Buffalo,* 279 App. Div. 263, 304 N. Y. 766; *Matter of Stevens* v. *Near,* 202 Misc. 324; *People ex rel. Lawrence Investing Co.* v. *Bowers,* 267 App. Div. 839.) II. The total assessments of $4,000 for the years 1950 and 1951 are not excessive. III. In overvaluation cases, the only pertinent assessment is that of the subject parcel. (*People ex rel. Yaras* v. *Kinnaw,* 303 N. Y. 224.) IV. Petitioner has not established any inequality. (*People ex rel. Warren* v. *Carter,* 109 N. Y. 576.)

*Richard L. Wolf,* respondent in person. I. The proceedings need not be remitted to the Special Term of the Supreme Court. (*Matter of National Sur.' Co.* [*Cheney Co.*], 176 Misc. 53.) II. The assessments in question are excessive, illegal and unequal.

FULD, J. In these proceedings, brought pursuant to article 13 of the Tax Law, to review assessments on real property in the Town of Hanover for the years 1950 and 1951, petitioner claims that such assessments — which amounted to $4,000 ($660 for the land and $3,340 for the improvements) — were erroneous because of overvaluation and inequality. The property in question consists of a private house and lot, in a community comprised chiefly of summer homes, on the shore of Lake Erie.

Upon the written stipulation of the parties, the court at Special Term referred the issues to an official referee, former Supreme Court Justice ALONZO G. HINKLEY, " to hear and determine." After a full trial of the issues before him, he confirmed the land component of the assessments and reduced the building component from $3,340 to $2,840, resulting in a reduction of the total assessment from $4,000 to $3,500. On the town's appeal from that determination of the referee, the Appellate Division, two justices dissenting, affirmed. The issue which divided the court was whether " a tax proceeding to review assessments may be referred to an Official Referee by any statute or rule or practice of the court ' to hear and determine.' "

That question — the power and authority of the court to refer the matter to an official referee " to hear and determine "

—was raised for the first time on appeal. It was, and is, the town's position that section 293 of the Tax Law compels a determination of the issues by the court itself and that, if a referee is appointed to take evidence, the reference must be one " to hear and report," and not one " to hear and determine."

Section 293 of the Tax Law provides that if, upon the hearing to consider whether the assessment is illegal, erroneous or unequal, it appears that testimony is necessary for the proper disposition of the matter, the court may take evidence or " *appoint a referee to take such evidence* as it may direct, *and report the same to the court,* with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made." (Emphasis supplied.) In words, therefore, the power to direct a reference under article 13 is restricted to one " to take  *  *  *  evidence  *  *  *  and report ". It is urged by petitioner, however, that section 117 of the Judiciary Law furnishes the essential authority for a reference by an official referee to hear and determine. That section recites that, " As to all motions actions or proceedings submitted to an official referee *by stipulation of the parties appearing therein, or order of the court,* except matrimonial actions, the same shall be deemed duly referred to said official referee and, in addition to all the powers now conferred by section four hundred sixty-nine of the civil practice act, he shall proceed therein with the same power and authority as a justice presiding at a regular special term of the supreme court ". (Emphasis supplied.)

It may well be, as argued, that section 117 does not expand the class of litigation — so as to include tax review proceedings under article 13 — which may be referred to an official referee to hear and determine, or authorize the court on its own motion to order such a reference. (Cf. *Salvino* v. *Ruzzo,* 282 App. Div. 1093; *Newcomb* v. *Newcomb,* 281 App. Div. 689; but cf. *Matter of Brock,* 245 App. Div. 5.) But we need not now concern ourselves with that problem, since it is clear that the present reference was properly directed upon the stipulation of the parties. In a court which has jurisdiction over the subject matter of the litigation, the parties may agree, within broad limits, as to the mode of trial. Statutory procedures and, indeed, even the constitutionally protected right to a jury trial

may be waived by the parties' acquiescence in the procedure adopted. (See *Matter of Powley* v. *Dorland Bldg. Co.*, 281 N. Y. 423; *Matter of Malloy*, 278 N. Y. 429; *Baird* v. *Mayor of City of New York*, 74 N. Y. 382.) The appointment of a referee to hear and determine, made by a court fully vested with jurisdiction, relates only to the form of trial (see, e.g., *Steamship Co.* v. *Tugman*, 106 U. S. 118, 123) and, if upon consent, is unassailable.

In the case before us, the parties in writing agreed that the Supreme Court, which, of course, had full power to hear and determine the subject controversy, should refer the issues to an official referee of the court. Both parties put in their evidence and the town's motion to dismiss at the close of the trial was in the most general terms, and, indeed, no objection was raised to the trial procedure until the appeal reached the Appellate Division. It was too late a stage in the proceeding to claim that the reference was not authorized. As this court wrote in the *Powley* case (*supra*, 281 N. Y. 423, 428–429), where a referee was likewise appointed without demur and evidence was introduced without objection that the referee lacked authority to try the issue, " The respondent cannot put in his evidence and take his chance that he will win and, upon his failure, claim that the reference was illegal. It was within the power of the parties to confer jurisdiction on the court to determine the issues. The reference had the same effect as a reference in a judgment creditor's action against a third party under section 795 of the Civil Practice Act would have had. The parties conferred jurisdiction on the court by the failure to raise the objection now made. (*Baird* v. *Mayor*, 74 N. Y. 382.) " As noted, any objection that Special Term's power to refer was limited in this case to a reference to hear and report was waived, not merely by a failure to voice objection, but actually by the formal written consent engrossed on the order of reference itself. There can be no doubt that the parties became bound by the judgment entered. (See *Matter of Powley* v. *Dorland Bldg. Co., supra*, 281 N. Y. 423, 428.)

The town urges two other grounds for reversal — that petitioner has not established any inequality and that the assessments were not excessive — and to them we turn.

Since the Appellate Division affirmed the findings of the referee, we may consider only whether the findings of value were based on an erroneous principle of valuation. The referee having held that a reduction must be decreed because the assessment was " out of proportion and excessive," an affirmance is compelled if there is evidence which supports either finding, inequality or overvaluation. Careful appraisal of the record persuades us that there is no such proof.

On the issue of inequality, petitioner adduced testimony directed, in the main, to establish that the assessments of similar, neighboring parcels were lower than the assessment of petitioner's property. Such evidence, however, is irrelevant to the issue; a comparison of the assessment of the subject property with the assessments of other properties, unaccompanied by evidence of their full value, cannot furnish basis for a finding of inequality. In an inequality case, the task is to make a quite different comparison, a comparison between the rate of assessment of the subject property — i.e., the proportion of its assessed value to its full value — and the rates of assessment of a fair sampling of properties throughout the tax district. (Tax Law, § 293; see *People ex rel. Yaras* v. *Kinnaw,* 303 N. Y. 224; *People ex rel. Hagy* v. *Lewis,* 280 N. Y. 184; *People ex rel. Warren* v. *Carter,* 109 N. Y. 576.)

The reason why a mere comparison of the assessment of a neighbor's property is irrelevant, and why the question is solely one of comparative *rate* of assessment, is evident when the purpose of an inequality proceeding is borne in mind. This court long ago held that the injustice to be redressed in such a proceeding is discriminatory assessing which has the effect of compelling the taxpayer to pay more than his due share of the aggregate tax, that is, the levy on all the taxpayers in the entire district. (See *People ex rel. Delaware & Hudson Canal Co.* v. *Ganley,* 131 N. Y. 566; *People ex rel. Warren* v. *Carter, supra,* 109 N. Y. 576.) But that grievance may not be established simply by showing an underassessment of neighbor A's property. As Judge ANDREWS, writing for the court in the *Warren* case, put it, " If a particular piece of property [e.g., neighbor A's] on an assessment-roll is under-valued, another [e.g., neighbor B's] may be correspondingly over-valued " (109 N. Y., at pp. 580–581). In such circumstances, the subject property would

be bearing no greater than its due proportionate share of the total tax burden, and, as indicated, the petitioner would have no cause or basis for complaint.

Nor would a property owner have a redressable grievance if five neighbors had been unduly favored by assessments at, say, only 50% of full value, while all of the numerous other parcels in the tax district were assessed at full value. A revision of the assessment of the subject property, to make it more fairly proportionate to the assessments of the five neighboring parcels, might, on first reaction, seem to achieve a substantially just result. Actually, though, such a revision would introduce greater disproportion into an assessment-roll, because, to reduce petitioner's assessment to 50% of full value would simply increase, from five to six, the owners who were being unduly favored at the expense of all other owners in the tax district. The only remedy in the hypothetical case just supposed would be to have the assessors increase the assessments of the favored five from 50% to full value.

More precisely, petitioner, to become entitled to relief, must show that the inequality of which he complains would subject him to the payment of more than his just proportion of the aggregate tax. That is the rationale underlying our decision in *People ex rel. Warren* v. *Carter* (*supra,* 109 N. Y. 576), and that is the reason why proof of inequality may be established only by showing that the assessment has been made, to quote the applicable provision of statute, '' at a higher proportionate valuation than the assessment of other property on the same roll by the same officers '' (Tax Law, § 290-c).

Although, theoretically, this could be shown only by establishing that the subject property is assessed at a greater proportion of its full value than are all the other properties in the tax district, the efforts of the legislature have been directed to shortening the trials in inequality cases, and, accordingly, a procedure for making a selection of test parcels has been prescribed. (See, e.g., *People ex rel. Yaras* v. *Kinnaw, supra,* 303 N. Y. 224, 231.) Section 293 of the Tax Law was specifically designed to provide that the parties may agree on '' a selection of parcels to be valued '', or, if they fail to agree, that the court or referee make the selection. This procedural provision of the Tax Law clearly contemplates the valuation of each of the

sample parcels. Since it is the comparison of the rates of assessment that has to be made, it follows that it is the rate of the assessment of the subject parcel and of the selected sample parcels that must be ascertained. The sample parcels should be selected, not for their similarity to the subject parcel, but rather as a fair " cross-section of the situation that exists throughout a tax district." (*People ex rel. Hagy v. Lewis, supra,* 280 N. Y. 184, 188.) Indeed, the fair selection of sample parcels, their evaluation, the consequent computation of their rates of assessment, and the comparison of their average rate of assessment with that of the subject property constitute the sum and substance of an inequality trial. The *Hagy* case, with care and precision, points the procedure to be followed, and we avoid needless repetition by referring to it, rather than by setting it forth again.

In the case before us, the values of neither the subject property nor the compared properties were ascertained, and there was no evidence of, or even inquiry into, the rates of assessment of the various properties. Such proof is basic, and the failure to supply it left a fatal void in petitioner's case. (See *People ex rel. Greenwood v. Feitner,* 77 App. Div. 428, 431–432.) There is just no evidence to support the finding of inequality, nothing to show that petitioner will pay more than his due share of the aggregate tax.

Nor may the determination below be upheld, or petitioner assisted, by viewing the reduction of the assessment as one based on a finding of excessiveness or overvaluation. Entirely lacking is any testimony by any witness that the property was worth less than its assessed value of $4,000. The two expert witnesses called by the town placed its value at $9,000 and $8,500, and petitioner himself at the trial refused to place a value on it, observing, " I do not intend to sell it; I wouldn't take $10,000." Nor may any weight be given, on the over-valuation issue — any more than on the inequality issue — to the testimony which was concerned with a comparison of the assessments of the subject and neighboring properties. Since the issue in an overvaluation case is whether the property is assessed at more than " the full value thereof " (Tax Law, § 8), an assessment may not be found excessive merely because some other similar property is assessed at a lower figure, if it does

not appear that the subject property was assessed beyond its actual value. " Where there is no over-valuation of his own property," the court ruled in *People ex rel. Warren* v. *Carter* (*supra,* 109 N. Y. 576, 581), " it does not follow that the taxpayer will be injured by an under-valuation of some piece of property belonging to another." It is for this reason, as we recently held in the *Yaras* case (*supra,* 303 N. Y. 224, 229), that, " In overvaluation cases, the only pertinent assessment is that of the subject parcel ".

Of course, it hardly requires statement, evidence of inequality or overvaluation, given in accordance with the procedures which we have outlined, may establish that petitioner is, indeed, aggrieved by the assessments under review. As a matter of law, however, we must hold that the findings of value are without legal support.

The appeal has, in terms, been taken from the judgment entered on the order of the Appellate Division, rather than from the order itself. It is the order which is the appealable paper (Civ. Prac. Act, § 591, subd. 2; Tax Law, §§ 291, 293, 295; see *Matter of New York Conference Assn. of Seventh-Day Adventists* v. *Schenck,* 304 N. Y. 706; cf. *People ex rel. Wallkill Valley R. R. Co.* v. *Keator,* 101 N. Y. 610), but, since the appeal is, in any event, timely taken, we disregard the reference to the judgment as mere misdescription. (See *Rosenberg* v. *General Realty Service,* 259 N. Y. 123.)

The order of the Appellate Division should be reversed and the matter remitted to Special Term for further proceedings in accordance with this opinion, with costs to abide the event.

CONWAY, Ch. J., DESMOND, DYE, FROESSEL, VAN VOORHIS and BURKE, JJ., concur.

Order reversed, etc.