The People of the State of New York ex rel. Bingham Operating Corp., Relator, against W. Everett Eyrich, as Assessor of the City of Binghamton, et al., Respondents.

The People of the State of New York ex rel. Bingham Operating Corp., Relator, against Everett W. Gorton, as Assessor of the City of Binghamton, et al., Respondents.

Supreme Court, Trial Term, Broome County, November 14, 1945.

*Charles R. Stewart* for relator.

*Herbert H. Ray, Corporation Counsel* (*Lester R. Mosher* of counsel), for respondents.

Santry, J. By a decision handed down in this proceeding on the 20th day of September, 1945, the fair and true value of the subject property was fixed at $85,000; a finding was made that real estate in the tax district was, during the years in question, assessed at 92% of its true value, and the assessment was accordingly reduced to $78,200. After the decision was made the respondents asked for a rehearing on the finding that the real property in the tax district was assessed at 92% of its true value. This was granted by an order to show cause directed to the relator.

This finding was based on evidence consisting of a certificate of the Board of Supervisors of Broome County, showing that

this board had fixed the equalization rate for the City of Bing-- hamton, the tax district in which the subject property was located, at 92% of its real value.

The respondents claim that this certificate should not have been received in evidence or considered, and that it was incompetent, irrelevant and immaterial, and not binding upon them. They further assert that even though this certificate was received in evidence, it was not sufficient to support a finding that property generally in the city of Binghamton was assessed at 92% of its true value.

No testimony was offered by the respondents on the question as to what ratio the assessment of real property generally in the city of Binghamton bore to its real value.

The respondents rely largely on the case of *People ex rel. Syracuse Trust Co.* v. *Matt* (283 N. Y. 241) as authority for their contentions. This case involved an assessment in the city of Utica, New York. The trial was held before CROUCH, Official Referee of the Court of Appeals. The relator offered in evidence a certificate of the Board of Supervisors showing that the board had fixed the equalization rate for the City of Utica at 65% of the true value. The respondents objected to the admission of the certificate and the Referee reserved decision. No other testimony was offered on the issue of inequality.

The Referee in his decision discussed at length the admissibility of the equalization certificate, and reached the conclusion that it was competent evidence, and admitted it as some evidence bearing on the issue, and then stated: " The result in view of the total absence of evidence on behalf of the respondent, is that there must be a finding of inequality and a reduction of the assessment to 65 per cent. of $650,000.00."

Subsequently the respondents made an application for the Referee to reopen the case to permit the introduction of additional evidence on the issue of inequality. The application was granted, and the respondents introduced in evidence a sworn statement of the Board of Assessors that the assessment value of all property was at a sum which a majority of the assessors decided to be full value, the testimony of one assessor that the board had assessed all property at its full value, and the testimony of two real estate brokers familiar with values, that real estate was assessed at full value.

In his supplemental report, the Referee, after specifically summarizing the evidence before him on the issue of inequality as consisting of the equalization certificate and the additional evidence referred to above in opposition, reached the conclusion

that real estate in the city of Utica was assessed at its full value. He, thereupon, reversed his former finding on this issue.

When the report of the Referee came up for confirmation, the court, at Special Term, refused to confirm the finding that real restate in the city of Utica was assessed for full value, and substituted a finding that it was assessed at 65% of such value, as indicated by the equalization rate, and directed judgment accordingly.

On appeal the Appellate Division reversed the finding of the Special Term, and restored the revised finding of the Referee made after the rehearing. The memorandum opinion of the Appellate Division states: " We think the findings contained in the report of the referee in respect to assessment at full value and in respect to-the value of the property are in accord with the weight of the evidence and that the contrary findings of the Special Term are not supported by the weight of evidence." (*People ex rel. Syracuse Trust Co.* v. *Matt,* 258 App. Div. 853.)

The Court of Appeals affirmed the action of the Appellate Division on the inequality issue in a *Per Curiam* opinion in which they say (283 N. Y. 241, 243): " We agree with the Appellate Division in its disposition of the question raised as to the applicability of the equalization rate."

This case simply holds that upon all the evidence presented, of which the certificate of equalization was a part, the weight of evidence supported the finding that assessments were at full value, and did not support a finding to the contrary.

Nowhere is there a holding or a suggestion that the certificate was inadmissible in evidence, or that, in the absence of any evidence to the contrary, it would not be sufficient to support a finding that the assessments were at 65% of real value. ,

The case of *People ex rel. Bennett Hotel Co.* v. *Cucci* (263 App. Div. 761) concerned proceedings to review the assessments for the years 1935 to 1939, on the same property involved in the case at bar. In that case the certificate of equalization of the Board of Supervisors was offered in evidence against the contention of the respondents that it was incompetent. No other evidence was offered on the issue of inequality. The referee found that assessments generally in the city were made at less than real value, as set forth in the equalization certificate. His report was confirmed, and on appeal the Appellate Division affirmed the order and judgment entered thereon. Examination of the briefs of counsel used on the argument in the Appellate Division in that case discloses that the question

of the admissibility of the certificate and use of the equalization rate was raised and fully briefed by the appellants.

Section 50 of the Tax Law, places upon the Board of Supervisors the duty of examining the assessment rolls in the several tax districts in their county for the purpose of equalization of assessments among such districts. This law likewise directs that, as the first step in this proceeding. " First, the ratio or percentage which the assessed value of the real property in each district bears to its full value shall be established by the board upon proper inquiry and investigation conducted by it and shall be stated in a resolution by the board after such inquiry and investigation."

The ratio thus found constitutes a determination by an official body after investigation and inquiry into the facts. It should carry probative weight, equal in quality, at least, to the opinion testimony as to value by experts, whose conclusions so often coincide with the requirements of the party who employs them.

Section 378 of the Public Health Law requires the coroner, in cases of death without medical attendance, to hold an inquest and issue a certificate, which shall, among other things, state whether the death was probably accidental, suicidal or homicidal. In *Scott* v. *Empire State Degree of Honor* (204 App. Div. 530) which was an action by a beneficiary to recover on an insurance policy where the defense was based on the suicide of the insured, it was held that the coroner's certificate that the death of the policyholder was caused by suicide, was competent evidence against the beneficiary. The court said (p. 532): " The certificate was properly received in evidence and was presumptive evidence of the fact that the death of the insured was ' self-inflicted, or suicide.' "

It would appear that the equalization certificate was competent evidence on the issue of inequality, and in the absence of any evidence to the contrary, sufficient to support a finding of such inequality.

I find no reason to disturb the original decision or findings.