THE PEOPLE OF THE STATE OF NEW YORK ex rel. COPLIN YARAS, Appellant, against RICHARD J. KINNAW, as Commissioner of Assessment and Taxation of the City of Albany, et al., Respondents.

Argued April 6, 1951; decided July 11, 1951.

*Ernest B. Morris* and *Coplin Yaras,* in person, for Coplin Yaras, appellant. I. The weight of evidence submitted under section 293 of the Tax Law sustains the finding of 72.4% inequality made at Special Term; no other result is possible under the statute. (*People ex rel. Hagy* v. *Lewis,* 280 N. Y. 184; *People ex rel. Ten Broeck Apts. Corp.* v. *Kinnaw,* 197 Misc. 362; *People ex rel. Reynolds* v. *Kinnaw,* 276 App. Div. 718; *People ex rel. Warren* v. *Carter,* 109 N. Y. 576; *People ex rel. Stewart* v. *Feitner,* 53 Misc. 334.) II. The disposition of the county and State equalization rates by the Referee as confirmed at Special Term and as approved by Presiding Justice FOSTER and Official Referee SANTRY, was in accord with the weight of evidence; the holding by the majority in the Appellate Division that such rates tend to increase the inequality ratio is erroneous as matter of law. (*People ex rel. Queens Borough Gas & Elec. Co.* v. *Woodbury,* 67 Misc. 481; *People ex rel. Syracuse Trust Co.* v. *Matt,* 283 N. Y. 241.) III. The opinion evidence offered by the city was inadmissible; in any event its weight should not affect the ratio established by the statutory proof. (*People ex rel. Syracuse Trust Co.* v. *Matt,* 283 N. Y. 241; *Moran* v. *Standard Oil Co.,* 211 N. Y. 187.) IV. " Evidence as to actual sales " which is the only proof permitted by the statute aside from the sample parcel comparisons, lends added support to the ratio found at Special Term; in fact the comparison of sale prices with assessments warranted a lower ratio than 72%. (*People ex rel. Hagy* v. *Lewis,* 280 N. Y. 184; *People ex rel. Westchester St. R. R. Co.* v. *Public Service Comm.,* 210 N. Y. 456.) V. The finding by the majority of the Appellate Division cannot be sustained by any evidence in the record; it is plainly the result of an averaging process without justification in law. (*Van Der Harst* v. *Koenig,* 249 App. Div. 235.)

*Russell G. Hunt, Corporation Counsel (Harold E. Blodgett* of counsel), for respondents. I. The county rate of equalization as well as the State rate were not only competent but had probative force which the Referee, the Special Term and the Appellate Division were required to consider. II. The Court of Appeals in the case of *People ex rel. Hagy* v. *Lewis* (280 N. Y. 184) did not exclude other testimony where sampling and sales alone constituted the evidence respecting inequality. (*People ex rel. Reynolds* v. *Kinnaw*, 276 App. Div. 718; *Heiman* v. *Bishop*, 272 N. Y. 83; *Matter of Home Sav. Bank* [*Associates Discount Corp.*], 196 Misc. 427; *People ex rel. Syracuse Trust Co.* v. *Matt*, 283 N. Y. 241; *People ex rel. Bennett Hotel Co.* v. *Cucci*, 263 App. Div. 761; *People ex rel. Queens Borough Gas & Elec. Co.* v. *Woodbury*, 67 Misc. 481; *People ex rel. Bingham Operating Co.* v. *Eyrich*, 186 Misc. 434, 61 N. Y. S. 2d 679, 270 App. Div. 1063.)

FULD, J. In this certiorari proceeding, brought under article 13 of the Tax Law, to review assessments on real property in the city of Albany for the year 1948, relator claimed that such assessments which amounted to $394,500 were erroneous, not only because of overvaluation, but also because of inequality in that they had been made at a higher proportionate valuation than the assessment of other property on the same roll (Tax Law, § 290, now § 290-c). We are concerned only with the latter issue of inequality, the issue as to overvaluation having been settled by the finding of the courts below: the determination by the court at Special Term reducing the assessment to $178,000 upon the ground of overvaluation was unanimously affirmed by the Appellate Division. (277 App. Div. 815.)

On the issue of inequality, Special Term found that the assessed valuations were erroneous to the extent of 27.6% and that real property in the subject district was assessed at the average ratio of 72.4% of its full value; accordingly, the assessments were further reduced to $128,872. The Appellate Division reversed on the law and facts, disapproved the findings and appointed an official referee, Honorable WILLIAM F. SANTRY, to take further proof. The referee reported that the ratio of assessed value to full value in the subject district was 75%. The Appellate Division also rejected that determination and ruled that the ratio should be 85%.

In our view, the weight of evidence strongly supports the 72.4% ratio found by Special Term. As we read the record, the only predicates for the 85% figure arrived at by the Appellate Division are the county and state equalization rates, fixed by the Albany County Board of Supervisors and the State Board of Equalization, factors which in this proceeding not only were entitled to no weight at all, but in truth were inadmissible under section 293 of the Tax Law.

The pertinent statutory provisions limit the proof that may be adduced in a proceeding where the assessment is attacked as '' unequal ''; thus, the third paragraph of section 293 reads as follows: '' Upon the hearing the parties to the proceeding may mutually agree on parcels of real property to be valued and the number of witnesses to be sworn. But in case the parties fail to agree on a selection of parcels to be valued and the number of witnesses to be sworn, then upon application of either party the court or referee shall determine the number of witnesses to be sworn, select the parcels that shall be valued without reference to their assessed values, *and both parties shall be limited in their proof on the trial to such witnesses and the parcels so selected,* except that evidence as to actual sales of real property within the tax district that occurred during the year in which the assessment under review was made may be given by either party. Before any testimony is given by either party as to the value of the parcels so selected, each party shall simultaneously file with the court or referee, on a date fixed by the court or referee, a written statement or tabulation of the appraised values placed upon the parcels selected by the witnesses of the respective parties, and each party shall serve on the other at the same time a copy of such statement or tabulation of values fixed by his witnesses.'' (Emphasis supplied.)

The command of the statute that '' both parties shall be limited in their proof '' to the sample parcels clearly excludes proof of equalization rates. This limitation is made subject to the single, specified exception contained in the same sentence — '' except that evidence as to actual sales of real property within the tax district that occurred during the year in which the assessment under review was made may be given by either party.''

We cannot agree with the Appellate Division's conclusion that the limiting provisions of the statute apply to overvaluation as well as to inequality cases and, for that reason, cannot operate to exclude all proof other than sample parcels and contemporaneous sales. In overvaluation cases, the only pertinent assessment is that of the subject parcel; assessments of other parcels are irrelevant to overvaluation and so are the statutory procedures relating to the assessment ratios in the sample parcels and in the sales of other parcels.

While the Appellate Division's observation — that the purpose of the limitations in section 293 is to '' limit the range of proof on other parcels '' (277 App. Div. 1062) — leads to the correct analysis of the admissible lines of proof in inequality cases, its ruling that weight must be given to equalization rates and to opinion evidence of the city-wide levels of assessments is erroneous. Apart from other considerations, it would throw an inequality case open to endless collateral proof, for, unless the other party were to stand mute and accept the determinations of equalization boards, the correctness of such findings could be successfully challenged only by an examination of countless parcels by the trier of facts. The same kind of testing would be invited by permitting alleged experts to state what in their opinion is the average ratio of assessments to value in the tax district. The opinion of an expert offered in contradiction would be of no aid to the court unless, in turn, his opinion were to be tested by the evidence of countless other parcels.

The legislature unquestionably sought to avoid just such endless labyrinths by enacting section 293 and by adopting the procedures therein specified. To engulf a taxpayer, or a taxing body, in such uncharted seas of proof would foreclose any conscientious challenge of unequal assessing. In *People ex rel. Town of Hempstead* v. *State Bd. of Tax Comrs.* (163 App. Div. 803, mod. 214 N. Y. 594), for instance, the town's attack on county equalization rates was upheld after the consideration of over a thousand different parcels. Such litigation also suggests that equalization rates are not to be readily accepted in the absence of exhaustive testing beyond the resources of the average taxpayer.

While there is a certain superficial resemblance between " inequality " and " equalization " — for both have reference to the relation between assessed values and full values of property — a county or state equalization rate serves a function entirely distinct from that to be served by the ratio fixed in inequality cases, and an equalization rate has no bearing upon the issue presented in such cases. The assessed valuation of a parcel is " unequal " if the assessment has been made " at a higher proportionate valuation than the assessment of other property on the same roll by the same officers " (Tax Law, § 290, now § 290-c). A typical claim of inequality is that property for instance, in the city of Albany, generally is assessed at less than its full value for tax purposes and that the subject property is assessed at its full value or at a greater percentage of its full value than properties in the city generally. On the other hand, the " purpose " sought to be achieved through equalization by boards of supervisors is the " ascertaining whether the valuations in one tax district bear a just relation to the valuations in all the tax districts in the county " and the adjustment of the equalization rates where necessary to establish such " just relation " (Tax Law, § 50). When the equalization rates are properly adjusted, the tax imposed on each of the tax districts is justly proportioned to the value of the taxable property within its limits. The purpose of equalization may be accomplished as a practical matter, however, even if the rate for Town A is higher than the true proportion of assessed valuations in Town A to the full value of the property in the town.. If Town A's rate is 96%, as compared with a true proportion of, for example, 72.4%, the town is not prejudiced if all the other towns or tax districts in the county have the same discrepancy. If Town B's equalization rate is only 92% and the true proportion of Town B's assessments to full value is also 72.4%, the necessary correction would be to change Town A's rate in a proper proceeding to 92%, and not to 72.4% (Tax Law, §§ 175–177). Thus, the equalization rates may be, as in the *Hempstead* case (163 App. Div. 803), erroneous in their relation to each other. If the rates are not incorrect in this regard, rough justice is accomplished, for their purpose is to serve as a base for the allocation of tax burdens, and benefits, amongst the towns and tax districts. But such rates would be misleading in

an inequality case since they do not purport to reflect the ratio of assessments to value within the tax district itself. (See *People ex rel. Syracuse Trust Co.* v. *Matt,* 283 N. Y. 241.)

On the subject of this serious infirmity in equalization rates as proof of inequality ratios, we have in the record before us the admission of one of the city's witnesses, Mr. Walter L. Collins, legal advisor to the Board of Supervisors of Albany County. He testified that it is " immaterial " to that board to establish an exact ratio between true value and assessments so long as proportionate ratios among various tax districts are established. And, beyond that, a bill which in 1950 sought to amend section 293 so as to provide that the determination fixing a county equalization rate shall be " presumptive evidence " of the ratio of inequality (Sen. Int. 2693), was vetoed by Governor Dewey upon the ground — set forth in his memorandum — that " The bill is unrealistic. It overlooks the purpose of *a county equalization rate,* which is to provide for the apportionment of county taxes among the various districts in the county and which in reality often *does not have any accurate relationship to the true full value of the property in the county.*" (Emphasis supplied.)

The procedures to correct unequal assessments, contained in article 13 of the Tax Law, have always been treated by the legislature as having no relation either to the equalization process (Tax Law, art. 3) or to proceedings to correct equalization rates (Tax Law, art. 8, §§ 175–177). Neither the taxpayer nor the taxing body is burdened, in an inequality case, with the task of challenging or sustaining equalization rates. The efforts of the legislature have been directed to shortening the trials in inequality cases. Since the issue involves proof as to the ratio of assessment to full value of all other properties in the tax district, such litigation, it was found years ago, became burdensome and unwieldy. (See *People ex rel. Stewart* v. *Feitner,* 53 Misc. 334.) Section 293 was expressly designed to limit the proof in such cases by giving to the court or referee the ultimate power to select the parcels to be valued and the number of witnesses to be sworn. To permit a court in its discretion to receive equalization rates in evidence in these cases would destroy the benefits of the statute's proof-limiting provisions and import into an inequality case all of the issues in an

appeal from an equalization rate, thereby confounding the trial with data designed to accomplish different ends.

In the light of section 293, opinion evidence as to the city-wide ratio of assessments to values is likewise impermissible. Indeed, quite apart from that statutory limitation, such opinion evidence is entitled to little, if any, weight. We share the view expressed by Justice BLACKMAR in the course of his opinion in *People ex rel. Queens Borough Gas & Elec. Co.* v. *Woodbury* (67 Misc. 481, 486), where an expert was called to state the relation of assessed valuations in a tax district to actual values: " My own opinion at the trial was that this is not a proper subject of expert testimony; that the evidence offered was a summary of other facts and a conclusion or an inference drawn from those facts, and that the witness instead of testifying to his conclusion from his knowledge of specific instances should have testified to such instances and left the conclusion to the court.''

The official referee expressed a similar opinion in the instant case. And, although he received this testimony, his recommended finding of a rate of 75% amounted to a rejection of the witnesses' opinions of ratios of 90% to 100%.

Turning, then, to the evidence of inequality properly received under section 293 and to its evaluation according to *People ex rel. Hagy* v. *Lewis* (280 N. Y. 184), there can be little doubt that the weight of evidence strongly sustains the finding of 72.4% made by the court at Special Term.

By stipulation, the referee appointed by that court selected six parcels of real estate in the city of Albany from those chosen by each of the parties, and received evidence of their assessments and of appraisals of their value by experts. There was little disagreement between the opposing experts as to value. The relator's parcels, assessed at $697,800, were valued by relator's witness at $1,211,750, and by the city's witness at $1,200,443. The city's parcels, assessed at $653,800, were valued at $654,664 by the city's expert without contradiction.

Based upon the values ascribed to those selected sample parcels by relator's expert, the ratio was 72.4%; on the basis of the values assigned to them by the city's witness, the figure was 72.8%.

The only other evidence properly to be considered was that of sales made in Albany in the year ending August 31, 1948. Again by stipulation, each of the parties submitted a list of selected sales, stating in each instance the consideration and the assessment, summarized as follows:

|  | Aggregate selling prices | Aggregate Assessments on same parcels at time of sale | Ratio of Assessments to selling prices |
| --- | --- | --- | --- |
| City's list | $1.576,481.48 | $1,445,700 | 91.7% |
| Relator's list | 2,711,123.43 | 1,088,840 | 40% |
| Both lists | 4,287,604.91 | 2,534,540 | 61.5% |

This line of evidence — and it is entitled to substantial weight under section 293 — would indicate a ratio of 61.5%. The higher figure of 72.4% found by the Special Term is therefore a maximum figure, favorable to the city, on all the cogent and competent evidence.

The finding of 85% by the Appellate Division was reached, according to its opinion, by giving weight to " official findings and opinion evidence ", as well as the sample parcels and sales, producing a " resulting average " of 85%. We note that its opinion in the companion case of *People ex rel. Reynolds* v. *Kinnaw* (276 App. Div. 718) stressed the circumstance that in a large number of certiorari proceedings it was usually stipulated that Albany property is assessed at about 85% of its full value. Manifestly, the prevalence of such stipulations may neither be deemed an evidentiary fact nor considered in determining the inequality ratio.

While the Appellate Division's apparent reluctance to reject a method which might achieve uniformity in inequality cases may be understandable, the operative and important factor is that the adoption of such a method flies in the face of the controlling statute. The statutory procedure may produce results varying from case to case, depending upon the sample parcels selected (see opinion of FOSTER, P. J., dissenting in the companion case of *People ex rel. Ten Broeck Apts. Corp.* v. *Kinnaw*, 276 App. Div. 722), but the statutory method, representing a practice long established, confines the proof to **fact evidence** and

excludes opinion evidence and official determinations which raise collateral issues of vast proportions. As Judge LOUGHRAN, writing for the court in the *Hagy* case (280 N. Y. 184, 187–188), expressed it, adoption of the statutory method " may perchance give effect to lopsidedness   \*   \*   \*.   But this possibility seems to us to be so remote as to be negligible in the ordinary case. \*   \*   \*   the idea of the statute appears to be that a sufficiently approximate arithmetical mean can be established by pooling a number of parcels (so selected) and comparing the aggregate of their assessed valuations with the aggregate of their full values.   \*   \*   \*   *We cannot say that such a process is inadequate for practical attainment of the rough equality which is all that has heretofore been possible under any system of taxation.''*   (Emphasis supplied.)

In the cases cited by Judge DYE in his dissent as authority for the admissibility of state and county equalization rates; neither party had offered proof in accordance with section 293. (See, particularly, *People ex rel. Bingham Operating Corp.* v. *Eyrich,* 186 Misc. 434, affd. 270 App. Div. 1063.)   In the absence of such proof — of sample parcels and sales — there was no other evidence available for the court's consideration, and, accordingly, those decisions may not here be regarded as authoritative.

The order of the Appellate Division should be reversed, and that of Special Term affirmed, with costs in this court and in the Appellate Division.

DYE, J. (dissenting).   The order of the Appellate Division should be affirmed, with costs.   There is no reasonable basis for excluding from evidence equalization rates as officially fixed by the State Tax Commission and the County Board of Supervisors when, as here, the correctness of such rates is supported by opinion testimony.   The courts have consistently recognized the admissibility of such proof (*People ex rel. Syracuse Trust Co.* v. *Matt,* 258 App. Div. 853, mod. 283 N. Y. 241; *People ex rel. Bingham Operating Corp.* v. *Eyrich,* 186 Misc. 434, affd. 270 App. Div. 1063; *People ex rel. Bennett Hotel Co.* v. *Cucci,* 263 App. Div. 761).   The case of *People ex rel. Hagy* v. *Lewis* (280 N. Y. 184) is not to the contrary as it dealt only with the sufficiency of the sampling method as proof of inequal-

ity. Section 293 may not reasonably be construed as authority to deprive otherwise competent proof of its probative value. As we read the section, the limitations mentioned have reference to the volume of comparative proof that may be offered without restriction as to use of otherwise competent proof. It does not follow that when the limited comparative value method is used, equalization rates are thereby deprived of weight. When so viewed, the weight of the evidence herein supports the findings of the Appellate Division.

LOUGHRAN, Ch. J., LEWIS, CONWAY and FROESSEL, JJ., concur with FULD, J.; DYE, J., dissents in opinion in which DESMOND, J., concurs.

Ordered accordingly.