In the Matter of LAWRENCE A. WIEN et al., as Joint Venturers Associated under the Name of EMPIRE STATE BUILDING COMPANY, Petitioners, v. TAX COMMISSION OF THE CITY OF NEW YORK, Respondent.

Supreme Court, Special Term, New York County, November 29, 1966.

*Frank & Whyman* for petitioners. *J. Lee Rankin, Corporation Counsel (Edward J. McLaughlin* and *James J. McGowan* of counsel), for respondent.

WILLIAM C. HECHT, JR., J.  In this consolidated tax certiorari proceeding, relators challenge assessments of their property as erroneous by reason of overvaluation and inequality.  They now seek an order directing pretrial examination of the respondent with respect to " actions and determinations of the respondent under section 159-1.0 of the Administrative Code of the City of New York ", together with production of all books, records and papers " describing or pertaining to [said] actions and determinations."

The motion requires, apparently as a matter of first impression, consideration of the meaning and effect of section 159-1.0 of the Administrative Code and its relevancy to a tax review proceeding based on the claim of inequality.

Section 159-1.0 of the Administrative Code (continued in substantially the same form as it originally appeared in section 899 of the New York City Charter, enacted in 1897), provides in pertinent part: " a.  Before opening the several books of annual record of assessed valuation for public inspection, the tax commission shall fix the valuations of property for the purpose of

taxation throughout the city at such sums as will, in its judgment, establish a just and equal relation between the valuations of property in each borough and throughout the entire city.''

Relators contend that said provision imposes a duty upon the Tax Commission to establish borough-wide equalization rates and apply them to the assessment rolls prior to the opening of the books of annual record. It is argued that these equalization rates are clearly relevant and material to the issues raised in an inequality case, to wit, whether the assessment of relators' property has been made at a higher proportionate valuation than the assessment of other real property on the assessment rolls for the same tax years (see Administrative Code, § 166-1.0; Real Property Tax Law, § 706). Respondent argues that whatever actions, if any, it may have taken with respect to section 159-1.0 are immaterial since it is the final result, i.e., the actual assessment, which is the subject of inquiry, not the methods which respondent may have employed in reaching that result. Respondent further contends that section 720 of the Real Property Tax Law sets a precise and exclusive limit on admissible evidence in an inequality case and that section does not encompass the matter here sought by relators. Consistent with this position, respondent declines to offer any argument with respect to the meaning and effect of section 159-1.0 of the Administrative Code and gives no indication of what actions, if any, it takes with respect to that section.

It is well settled, and relators readily concede, that they are not entitled to inquire into the methods and procedures employed by assessors in arriving at the assessment here challenged. However, the court agrees with relators that what is here sought is not the work product of the assessor, and is matter which is relevant to the question of inequality of assessment.

Respondent places considerable reliance upon the case of *People ex rel. Yaras* v. *Kinnaw* (303 N. Y. 224), decided in 1951, wherein the Court of Appeals held that State and county equalization rates were inadmissible in evidence at an inequality trial under section 293 of the Tax Law (the forerunner of present section 720 of the Real Property Tax Law). I believe that such reliance is misplaced. At the time of that decision, the methods employed in arriving at State equalization rates for counties and cities and the uses to which such rates were employed, were such that the rates lacked probative force on the issues raised in an inequality case (see, generally, Kilmer, Introduction to the Real Property Tax Law, McKinney's Cons. Laws of N. Y., Book 49 A, p. xxx *et seq.*). The local county board rates, not being limited to the tax district in issue (the

City of Albany), did not purport to reflect the true ratio of assessments to full value within that particular district, and so were no direct proof of said ratio. Following a study and report of the Moore Committee, the State Board of Equalization and Assessment completely revised State equalization rates and article 12 of the Real Property Tax Law established procedures to insure that such rates more accurately reflected the percentage of full value at which local assessments were made. By 1960 more than half of the counties in the State had adopted the State equalization rates for the purpose of apportioning county taxes. In 1961, the Legislature amended Real Property Tax Law section 720 so as to specifically provide that State equalization rates are admissible at an inequality trial (see L. 1961, ch. 942, § 1). [Such rates are annually promulgated both for New York City as a whole and for each of the five counties within the city]. Thus, not only has the validity of State equalization rates been improved since the decision in the *Yaras* case, but the Legislature has acted directly to overcome the holding of that case.

The relators here contend, and the plain language of section 159-1.0 bears out the contention, that respondent Tax Commission is required, in effect, to duplicate the work of the State Board of Equalization and Assessment (see Real Property Tax Law, § 1214) and reach an independent judgment as to the percentage of full value at which property in each borough (i.e., county) is to be assessed in order to establish " a just and equal relation " between valuations among the several boroughs. Since there is no requirement that these equalization ratios be publicly promulgated, relators seek discovery of the same pursuant to CPLR 3101.

This court can see no rational basis for distinguishing between the equalization rate established by the State board for New York County and that established by the Tax Commission, if any, for the Borough of Manhattan, in terms of admissibility when the latter has at least an equal probative force as the former on the question of inequality. Even assuming the continuing validity of the objection raised in the *Yaras* case, (*supra*), to the use of equalization rates promulgated by local county boards, that objection would not appear to be relevant to the instant situation since here the tax district in issue is the entire county itself and by the terms of section 159-1.0 of the Administrative Code the equalization rates fixed by the respondent for each borough would appear to directly reflect the ratio of assessments to full value within each such tax district. In view of the legislative reaction to the rule announced in *Yaras* (*supra*) this court must agree with the dissenters in that case,

that what is now section 720 of the Real Property Tax Law may not be so restrictively construed as to deprive otherwise competent proof of its probative value. The court, in *Yaras (supra)*, noted that it has been the continuing effort of the Legislature to shorten trials in inequality cases. The Legislature evidently believed that the introduction of equalization rates would not work contrary to that purpose. [Such a trial may not be used as a vehicle for collaterally attacking the equalization rates themselves (see, e.g., Real Property Tax Law, art. 12), but, rather, said rates may simply be introduced as some evidence of what the actual ratio is between assessed value and full value.] Indeed, in the instant situation the introduction of the city's equalization rate for Manhattan may conceivably shorten the trial. If the relators accept the rate reported by respondent as the actual ratio applied to property generally in Manhattan, then there will be no need for proving said ratio by sampling, sales and State equalization rates (pursuant to Real Property Tax Law, § 720) and the trial will concern itself merely with proof of the actual full value of relators' property and the actual ratio between that and the assessed value of the property. If relators reject the equalization rate reported by respondent, they may, of course, proceed under section 716 of the Real Property Tax Law and seek to secure an admission from respondent that some lesser rate is actually applied. Should respondent make such admission, then again the trial would be shortened to the question of the relation of full value to assessed value of the particular property in question. If relators reject the reported equalization rate and no admission is forthcoming pursuant to section 716, then the parties must prove the actual generally applied ratio of full value to assessed value in accordance with the methods outlined in, and the limitations imposed by, section 720 of the Real Property Tax Law, save that the equalization rate, if any, fixed by respondent pursuant to section 159-1.0 of the Administrative Code, shall also be admissible.

Consequently, relators are at least entitled to know (1) whether or not respondent has fixed equalization rates pursuant to section 159-1.0, and, if it has, (2) what the rates were for the Borough of Manhattan for the tax years in question.

The relators' moving papers demand much more than these two items of information, and appear to be seeking what they otherwise acknowledge is irrelevant, i.e., the methods of equalization rather than the result. The motion is denied, with leave to relators to serve upon respondent interrogatories posing the two permissible inquiries enumerated above.