In the Matter of JOSEPH N. CANIGIANI, Respondent, v BOARD OF ASSESSORS et al., Appellants. (Proceeding No. 1.)

In the Matter of WILMAR CONSTRUCTION CORP., Respondent, v BOARD OF ASSESSORS et al., Appellants. (Proceeding No. 2.)

In the Matter of JAY J. RADDOCK, Respondent, v BOARD OF ASSESSORS et al., Appellants. (Proceeding No. 3.)

Second Department, December 27, 1983

APPEARANCES OF COUNSEL

*Edward G. McCabe, County Attorney* (*Robert N. Goldstein* and *Andrew G. Cangemi* of counsel), for appellants.

*Koeppel Sommer & Martone, P. C.* (*Adolph Koeppel, William D. Siegel, Saul R. Fenchel, Bernard Sommer, Tracie P. Peddy* and *Donald F. Leistman* of counsel), for respondents.

OPINION OF THE COURT

MANGANO, J.

I

■ ■ The primary issue to be resolved on these three appeals is whether it was proper to allow petitioners, who were challenging real property tax assessments on the ground of inequality, to establish ratio of assessed valuation to fair market value by means of the State equalization rates (hereinafter referred to as State rates) promulgated by the State Board of Equalization and Assessment. For the reasons hereinafter set forth, we hold that it was proper to do so in the Canigiani and Wilmar proceedings, but not proper in the Raddock proceeding.

## II

Petitioner Canigiani commenced a proceeding pursuant to article 7 of the Real Property Tax Law, to review tax assessments on certain real property for the tax years 1974/1975 through 1980/1981. Specifically, Canigiani sought reductions in his assessments for these years on the ground of inequality, viz., that for the years in issue his property was assessed at a higher ratio to fair market value than other property in the district generally (*People ex rel. Yaras v Kinnaw,* 303 NY 224). At the commencement of the trial of this proceeding on March 23, 1981, Canigiani orally requested the court to apply the State rates for the years in question as proof of the proper ratio between assessed valuation and fair market value. Appellants Board of Assessors and Board of Assessment Review of the County of Nassau objected to the use of the State rates and specifically argued that the use of such rates was precluded by virtue of an amendment to subdivision 3 of section 720 of the Real Property Tax Law (L 1979, ch 126, eff May 22, 1979).

Special Term granted Canigiani's motion, overruled the appellants' objection to the use of the State rates for the tax years at issue, and on April 8, 1981, rendered a decision incorporating the use of the State rates and reducing Canigiani's assessments.

On the very date that Special Term rendered its decision utilizing the State rates for the years at issue, this court decided the appeal in *Matter of Slewett & Farber v Board of Assessors* (80 AD2d 186). In *Matter of Slewett & Farber* (*supra*), petitioners, who owned a large commercial parcel, instituted proceedings to review their assessments, alleging that for the years 1965/1966 through 1977/1978, their property was assessed at a higher ratio to fair market value than other property in the county. In February, 1978, the petitioners moved for partial summary judgment fixing the ratio to fair market value at which property was assessed for those years. Specifically, petitioners relied upon the rates established in the case of *860 Executive Towers v Board of Assessors* (84 Misc 2d 525, affd 53 AD2d 463, affd *sub nom. Matter of Pierre Pellaton Apts. v Board of Assessors,* 43 NY2d 769 [on the opn of the Appellate

Division]) for the tax years 1965/1966 through 1973/1974 — which for the years 1970/1971 through 1973/1974 clearly were based upon the State equalization ratios — and upon the applicable equalization rates for the remaining years in issue. In February, 1978, when petitioners' motion in *Matter of Slewett & Farber (supra)*, was made, the use of State rates to prove ratio of assessed valuation to fair market was provided for in former subdivision 3 of section 720 of the Real Property Tax Law which was amended in 1969 (L 1969, ch 302). Special Term granted petitioners' motion for partial summary judgment and fixed the ratio at a percentage reflected in *860 Executive Towers v Board of Assessors (supra)*, for the earlier years, viz., 1965/1966 through 1973/1974, and at the appropriate State rates for the following years, viz., 1974/1975 through 1977/1978.

Subsequent to the order of Special Term in *Matter of Slewett & Farber (supra)*, the Legislature adopted a series of statutory amendments which were intended to limit both prospectively and retroactively, the methods of proving inequality in proceedings challenging realty tax assessments. Insofar as is relevant to the case at bar, the Legislature amended subdivision 3 of section 720 of the Real Property Tax Law (L 1979, ch 126) so as to preclude the use of the State rates in proceedings alleging inequality of assessed valuations. The amendment, which was approved on May 22, 1979, provided that it would take effect immediately and was applicable to any proceeding commenced on or after January 1, 1970 and not finally determined as of the effective date of the legislation (L 1979, ch 126, § 4; L 1979, ch 127, § 3; *Matter of Slewett & Farber v Board of Assessors,* 80 AD2d 186, 199, *supra*). The determination of Special Term in *Matter of Slewett & Farber* (97 Misc 2d 637) was thereafter appealed to this court and the constitutionality of the 1979 amendment to subdivision 3 of section 720 of the Real Property Tax Law became the principal issue on the appeal. The petitioners in *Matter of Slewett & Farber (supra)*, argued that (1) the 1979 amendment of subdivision 3 of section 720 of the Real Property Tax Law, by its terms, governed cases commenced after January 1, 1970, where interlocutory judgments fixing ratio had been entered prior to the date of

enactment of the amendment and (2) in this form, the 1979 amendment of subdivision 3 of section 720 of the Real Property Tax Law unconstitutionally deprived them of due process of law. Specifically, petitioners in *Matter of Slewett & Farber* (*supra*) argued that the 1979 amendment to subdivision 3 of section 720 of the Real Property Tax Law altered the rules of evidence in inequality cases in a manner which totally deprived tax review petitioners of their right to a refund. In addressing the issue as to whether the petitioners still had a "reasonably efficient mode of redress for their wrongs" (*Matter of Slewett & Farber v Board of Assessors,* 80 AD2d 186, 213, *supra*), this court upheld the constitutionality of the statute on its face and held that (*supra,* p 214) "[f]acially * * * the extinction of equalization rates as evidence of inequality would not appear to divest the right of redress since * * * proof of actual sales still remain[s] in the statute."[1] The plurality opinion went on to state that "[o]n the limited record before us, petitioners have not established that the cost of proving actual sales is so exorbitant as to render the method illusory." (*Matter of Slewett & Farber v Board of Assessors, supra,* p 216.)

Despite the fact that this court upheld the 1979 amendment to subdivision 3 of section 720 of the Real Property Tax Law on its face, it held that the statute "may not be applied constitutionally to tax review petitioners [including petitioners in *Slewett*] who have litigated their way to interlocutory adjudications fixing ratio prior to the enactment of the amendment which excluded use of equalization rates to prove inequality." (*Matter of Slewett & Farber v Board of Assessors, supra,* p 217.) In so holding, this court stressed that (1) interlocutory judgments fixing ratio which had been obtained by petitioners in tax review proceedings prior to the date of enactment of the 1979 amendment of subdivision 3 of section 720 of the Real Property Tax Law were essentially "final judgments" and (2) "legislative efforts to undo the proper judgments of courts * * * [were invalid] as illicit encroachments on the

---

1. The plurality opinion was of the view that the other remaining method contained in the statute for proving ratio, i.e., parcel selection "seem[ed] an unconstitutionally expensive method by which to prove inequality" (*Matter of Slewett & Farber v Board of Assessors,* 80 AD2d 186, 215, mod 54 NY2d 547).

judicial function" (*Matter of Slewett & Farber v Board of Assessors, supra,* p 218).

On April 15, 1981, a week after the decision of this court in *Matter of Slewett & Farber* (*supra*) was rendered, petitioner Joseph N. Canigiani moved to reopen his trial for the purpose of establishing that the cost of proving ratio by the actual sales approach was "so prohibit[ively] expensive as to render it illusory". In support of the motion, he argued that this court in *Matter of Slewett & Farber* (*supra*) had noted that the petitioners therein had not established that the cost of proving ratio by actual sales was unconstitutionally prohibitive. Accordingly, Canigiani argued that he was entitled to the opportunity to prove same.

In view of the decision of this court in *Matter of Slewett & Farber* (*supra*), appellants cross-moved for an order setting aside the decision of Special Term dated April 8, 1981, which had utilized the State rates. With respect to Canigiani's motion to reopen, appellants opposed it on the ground that this court in *Matter of Slewett & Farber* (*supra*) did have a sufficient record to make a determination that proof of ratio by actual sales was not so prohibitive in cost as to be illusory, and did so determine. Assuming, *arguendo,* that Canigiani was entitled to reopen, appellants also cross-moved for an order (1) reserving the right "to seek selection of sample parcels for appraisement, and/or the introduction of sales as evidence of ratio" and (2) notifying the Attorney-General that the constitutionality of subdivision 3 of section 720 of the Real Property Tax Law was being challenged.

Both petitioner Joseph N. Canigiani's motion and the appellants' cross motion were granted in an order of Special Term dated May 1, 1981, which states:

"It is clear that the appellate court in *Slewett & Farber,* except for the limited record before it, would have been compelled to consider the constitutionality of section 720(3) in a different light if there were evidence that establishment of ratio by the actual sales method was prohibitively expensive. Petitioners ask that we reopen this proceeding to put forth that evidence. The court finds it entirely just and proper to do so, and the arguments advanced against this course of action are unpersuasive.

Petitioner is entitled to demonstrate that the only other statutorily prescribed method of proving ratio available to them is economically repressive. The motion is granted.

"The cross motion of [appellants], in addition to requesting the court to set aside its decision, also seeks: (1) to reserve to [appellants] the right to select parcels or give proof of sales if a ratio trial is conducted; and (2) to have the Attorney General notified that the constitutionality of RPTL § 720(3) is under attack.

"The determination of Appellate Division requires that this court vacate its decision, and it has done so without prejudice to the hearing of petitioner's application. The request of [appellants] to show proof of actual sales should a ratio trial be conducted is granted. The right of a party to rely on actual sales is conferred by statute. Section 720(3) states: 'evidence may be given by either party as to actual sales of real property' whether or not parcels are selected. The other relief must also be allowed. The parcel selection system is one of the statutorily approved methods of establishing ratio, and [appellants] may avail [themselves] of that evidence to rebut petitioner's proof (*Matter of Merrick Holding Corp.* v. *Board of Assessors of County of Nassau*, 76 Misc 2d 754).

"The branch of the motion requesting that the Attorney General be notified that the constitutionality of a statute will be involved is granted, and the court, pursuant to CPLR 1012, is simultaneously forwarding a copy of this decision and the accompanying order to the Attorney General's Office".

On June 8, 1981, Canigiani moved "to incorporate the record of the trial in Wilmar Construction Corp. against the County Board of Assessors, which trial was conducted on May 18th and 19th of 1981, in which the petitioner in that proceeding presented its proof of what would be the cost of a sales survey in a ratio trial to fix the ratios for the tax years May 1, 1970, through and including May 1, 1980". Special Term granted the application.

On June 11, 1981, appellants again argued before Special Term that (1) this court in *Matter of Slewett & Farber* (*supra*), had already held that the cost of proving ratio by the actual sales method was not so prohibitive as to be

illusory and (2) the testimony that petitioner Canigiani desired to adduce on this point was therefore irrelevant. Appellants argued, in the alternative, that the correct vehicle to be utilized in challenging the constitutionality of the statute was a plenary action and not a certiorari proceeding commenced pursuant to article 7 of the Real Property Tax Law.

On June 29, 1981, Special Term held that (1) the decision of this court in *Matter of Slewett & Farber (supra)*, did not foreclose petitioner Canigiani from establishing that the cost of proving ratio by actual sales was so prohibitive as to be illusory and (2) the evidence adduced by petitioner Canigiani clearly established that the cost of proving by actual sales was so prohibitive as to be illusory. Special Term therefore allowed the admission of the State rates into evidence and reinstated its decision of April 8, 1981, which had utilized the State rates as proof of ratio.

Special Term rejected appellants' argument that any constitutional attacks on subdivision 3 of section 720 of the Real Property Tax Law had to be commenced in a plenary action, stating: "However, counsel for the [appellants] failed to inform the court what procedural devices and advantages would be available in a declaratory judgment action that would be foreclosed to it on this hearing. The issue is simple and clearly defined. The court finds no need for further refinement by pleadings or discovery proceedings".

Finally, Canigiani (1) moved by notice of motion dated July 14, 1981, for an order opening the trial for the purpose of taking "evidence and testimony on the justification of the State Equalization Rates in the County of Nassau" for the tax years in issue and "for documentary evidence of the actual rates and the methodology employed to derive those rates" and (2) moved by notice of motion dated August 18, 1981, for an order incorporating testimony presented in the Wilmar trial "on the appropriateness of the State Rate to the county of Nassau" and declaring that the use of the State rates as proof of ratio for the tax years in issue was justified.[2] On September 30, 1981, Special Term granted the latter motion and denied the former motion as moot.

---

**2.** In *860 Executive Towers v Board of Assessors* (53 AD2d 463, 472-475, affd *sub nom. Matter of Pierre Pellaton Apts. v Board of Assessors,* 43 NY2d 769) this court held that petitioners therein had met their limited burden under *Guth Realty v Gingold* (34

On October 20, 1981, judgment was entered in the Canigiani proceeding which (1) held, *inter alia,* that subdivision 3 of section 720 of the Real Property Tax Law, insofar as it prohibited the use of the State rates as a method of proving inequality, was unconstitutional, (2) reinstated its decision of April 8, 1981, which expressly allowed the use of the State rates, and (3) reduced the assessments on petitioner's properties for the tax years 1974/1975 through 1980/1981.

Petitioner Wilmar Construction Corp. commenced a proceeding pursuant to article 7 of the Real Property Tax Law to review real property tax assessments for the tax years 1971/1972 through 1979/1980. After hearings were conducted before Special Term in May and July, 1981, wherein Wilmar adduced evidence regarding (1) the prohibitive and allegedly unconstitutional cost of proving ratio by actual sales and (2) the justification of using the State rates in Nassau County for the tax years in issue, Special Term admitted the State rates as proof of ratio. On October 20, 1981, Special Term entered a judgment in accordance with that decision reducing Wilmar's assessed valuations for the tax years 1971/1972 through 1979/1980.

The third petitioner herein, Jay J. Raddock, commenced a proceeding pursuant to article 7 of the Real Property Tax Law to review tax assessments on certain property for the tax years 1965/1966 through 1980/1981. In May, 1982, Raddock moved for partial summary judgment on the issue of ratio for the tax years in issue. Specifically, he argued that (1) the State rates had been adjudicated by the courts as a valid method of proving ratio in Nassau County in the cases of *860 Executive Towers v Board of Assessors* (*supra* [1965/1966 through 1973/1974]), *Matter of Slewett & Farber* (*supra* [1974/1975 through 1977/1978]) and in the Canigiani and Wilmar cases (*supra* [1978/1979 through 1980/1981]) and (2) the appellants were collaterally estopped from challenging the validity of the State rates for those years.

---

NY2d 440) of establishing that (1) the methodology and underlying data employed by the State Board of Equalization and Assessment in promulgating the State rates was sound and (2) the use of the State rates as the basis for determining ratio for the tax years 1965/1966 through 1973/1974 in Nassau County, was justified.

By order entered September 28, 1982, Special Term granted petitioner Raddock's motion for partial summary judgment on the issue of ratio for the tax years in issue and held, based on the doctrine of collateral estoppel, that Raddock was entitled "to utilize the State equalization rates" for those years.

### III

Between the entry of the judgments in the Canigiani and Wilmar proceedings in October, 1981, and the entry of the order in the Raddock proceeding in September, 1982, certain developments occurred both in regard to the subject statute and the relevant case law which are crucial to a resolution of the instant appeals.

On October 30, 1981, the 1979 amendment to subdivision 3 of section 720 of the Real Property Tax Law expired (see L 1981, ch 259, § 7). Subdivision 3 was not re-enacted by the Legislature until December 3, 1981. On that date the Legislature enacted chapter 1057 of the Laws of 1981. Section 7 of that law contained a new subdivision 3 of section 720 of the Real Property Tax Law which again barred the introduction of the State rates in Nassau County and New York City as evidence of inequality in tax assessment review proceedings.

In contrast to the former amendment of subdivision 3 which was expressly made applicable to proceedings commenced on or after January 1, 1970 and not finally determined as of the date of enactment of said statute (L 1979, ch 126, § 4; L 1979, ch 127, § 3), no provision for retroactivity was set forth in chapter 1057 of the Laws of 1981. Section 17 thereof provides only that "[t]his act shall take effect immediately."

On January 7, 1982, the Court of Appeals issued its decision in *Matter of Slewett & Farber* (54 NY2d 547), modifying the decision of this court by, *inter alia,* deleting therefrom the declaration as to the constitutionality of former subdivision 3 of section 720 of the Real Property Tax Law, since that statute had expired during the pendency of the appeal to the Court of Appeals. Moreover, in view of the expiration of that statute, the Court of Appeals held that it had "no application to the case as it stands

before us" (*Matter of Slewett & Farber v Board of Assessors, supra,* p 554). The Court of Appeals then reviewed the determination of this court "on the basis of the statutory and case law now in effect" and held "under the applicable common law, the determination that the State equalization rate was the appropriate ratio between assessed value and full value was correct" (*Matter of Slewett & Farber v Board of Assessors, supra,* p 555).

In its argument before the Court of Appeals, the Board of Assessors of the County of Nassau also argued that the new subdivision 3 of section 720 of the Real Property Tax Law, which had gone into effect on December 3, 1981 (L 1981, ch 1057) and which again limited the use of State rates in tax review proceedings, should govern the disposition of the appeal. In rejecting that argument the Court of Appeals held that it perceived "no indication of legislative intent that the new enactment [was] to have retrospective application" to proceedings "in which [a] hearing with respect to assessment ratios [had] been concluded and an interlocutory judgment [had] been entered" (*Matter of Slewett & Farber v Board of Assessors, supra,* p 556).

In this particular regard, *Matter of Slewett & Farber* (*supra*), was clearly distinguishable from *Matter of Colt Inds. v Finance Administrator of City of N. Y.* (54 NY2d 533), which was decided on the same date. In that latter case, the Court of Appeals held that (1) the new subdivision 3 of section 720 of the Real Property Tax Law which was enacted on December 3, 1981, applied to proceedings pending on December 3, 1981, (2) the new subdivision 3 of section 720 of the Real Property Tax Law applied to the proceedings in *Matter of Colt Inds.* (*supra*), because "no evidentiary hearings [had] * * * been held or interlocutory determinations made" before the effective date of the new subdivision, as was the case in *Matter of Slewett & Farber* (*supra; see Matter of Colt Inds. v Finance Administrator of City of N. Y., supra,* p 543) and (3) the new subdivision 3 of section 720 of the Real Property Tax Law was constitutional.

Finally, in *Matter of Green Constr. Corp. v Finance Administrator of City of N. Y.* (56 NY2d 369, revg 83 AD2d 851), petitioner challenged a property's assessed valuation

for the tax years 1971/1972 through 1979/1980. During the trial of these consolidated proceedings, the trial court held that subdivision 3 of section 720 of the Real Property Tax Law as amended in 1979 was applicable. However, it declared that the statutory bar on the use of the State rates was unconstitutional. It therefore permitted the petitioners to introduce the State rates as proof of ratio. This court reversed (83 AD2d 851), on the basis of our holding in *Matter of Slewett & Farber (supra)* that subdivision 3 of section 720 of the Real Property Tax Law, as amended in 1979, was constitutional.

In June, 1982, the Court of Appeals reversed the Appellate Division. By parity of reasoning with its decision in *Matter of Slewett & Farber (supra)*, it held that former subdivision 3 of section 720 of the Real Property Tax Law had expired and therefore had no application to the case as it then stood before the court. The Court of Appeals also held (56 NY2d, at pp 375-376) that the newly enacted version of subdivision 3 was also inapplicable since a judgment had been granted to petitioners "before the present statute was enacted." Since neither version of subdivision 3 of section 720 of the Real Property Tax Law was applicable, the Court of Appeals turned to the common law on the issue of proof of ratio and held that the State rates were "proper proof" and were "properly admitted" at trial (*Matter of Green Constr. Corp. v Finance Administrator of City of N.Y., supra,* p 376).

With this background as a guide, we can now turn to a disposition of the instant appeals.

■ Since former subdivision 3 of section 720 of the Real Property Tax Law expired during the pendency of the appeals in Canigiani and Wilmar, we do not address the propriety of (1) Special Term's holding that former subdivision 3 of section 720 of the Real Property Tax Law was unconstitutional or (2) Special Term's intermediate order permitting petitioners Canigiani and Wilmar to reopen the trial for the purpose of establishing that the actual sales method of proving ratio was so prohibitive in cost as to be illusory (*Matter of Slewett & Farber v Board of Assessors, supra; Matter of Green Constr. Corp. v Finance Administrator of City of N.Y., supra*). Accordingly, the judgments

entered in Canigiani and Wilmar should be modified by deleting therefrom the declarations as to the unconstitutionality of former subdivision 3 of section 720 of the Real Property Tax Law (see *Matter of Slewett & Farber v Board of Assessors,* 54 NY2d 547, 553, *supra*). Moreover, as a consequence of the expiration of former subdivision 3 of section 720 of the Real Property Tax Law, it has "no application to the case as it stands before [this court] on the present appeal" (*Matter of Slewett & Farber v Board of Assessors, supra,* p 554; see, also, *Matter of Green Constr. Corp. v Finance Administrator of City of N. Y., supra*). Nor is the new subdivision 3 of section 720 of the Real Property Tax Law, which became effective on December 3, 1981, and which, insofar as is relevant herein, again prohibited the use of State rates in inequality review proceedings in Nassau County, applicable to these proceedings, in view of the fact that (1) judgments utilizing the State rates were entered in these proceedings before the present statute was enacted and (2) the present subdivision 3 of section 720 of the Real Property Tax Law is, by its own terms, prospective in application and therefore not applicable to cases in which a judgment had been entered prior to its enactment (*Matter of Green Constr. Corp. v Finance Administrator of City of N. Y., supra; Matter of Slewett & Farber v Board of Assessors, supra*).

We, therefore, review the determination of Special Term on the basis of the "law now in effect" (*Matter of Slewett & Farber v Board of Assessors,* 54 NY2d 547, 555, *supra*) and hold that the determination that the State rate was the appropriate ratio between assessed value and fair market value was correct.

Collectively, the tax years under review in the Canigiani and Wilmar proceedings are from 1971/1972 through 1980/1981. Although the assessing authorities are not normally precluded from challenging the methodology used in arriving at the State rate for the purpose of demonstrating the inappropriateness of the rate to the particular taxing unit, the category of the property involved, the particular property under review or for "any other valid reason" (*Guth Realty v Gingold,* 34 NY2d 440, 451, *supra*), this court in *860 Executive Towers v Board of*

*Assessors* (53 AD2d 463, *supra*), held that collateral estoppel can be used to prevent relitigation of these issues if they are disposed of in earlier proceedings. Specifically, this court stated in *860 Executive Towers v Board of Assessors* (*supra,* p 475): "The County had proposed to litigate the inequality issue *de novo* in these proceedings, challenging the SBEA methodology all over again. Special Term invoked the doctrine of collateral estoppel against the County, precluding it from relitigating the issue as to the applicability of the State equalization rates. Its determinations should be affirmed." Indeed, the Court of Appeals concurred with this reasoning when it stated in *Matter of Slewett & Farber* (54 NY2d 547, 555, *supra*): "[O]ur affirmance of the Appellate Division in *860 Executive Towers* (43 NY2d 769, *supra*) means that once the validity of the State equalization rate has been adjudicated, the county is collaterally estopped in other proceedings from further challenges of that rate."

In *860 Executive Towers* (*supra*), collateral estoppel was applied against the County of Nassau precluding it from relitigating the validity of the State rates for the tax years in issue, i.e., 1965/1966 through 1973/1974.

Accordingly, appellants in the Canigiani and Wilmar proceedings are collaterally estopped from challenging the validity of the State rates, not only for the tax years 1971/1972 through 1973/1974 (which are the earliest tax years under review herein), but also for the tax years 1974/1975 through 1977/1978, since the validity of the State rates for those years was adjudicated and reduced to an interlocutory judgment in *Matter of Slewett & Farber* (*supra*).

With regard to the use of the State rates for the tax years 1978/1979 through 1980/1981, a review of the testimony adduced during the proceedings before Special Term clearly established that the use of the State rates was justified for those years as well.[3]

---

**3.** The county contends that (1) petitioner Canigiani's motion to reopen the trial for the purpose of establishing that the use of State rates in Nassau County for the tax years in issue was justified, was untimely and (2) Special Term therefore erred in granting said motion. Under the particular facts of this case we are of the view that Special Term did not abuse its discretion in this regard (CPLR 4405; 4 Weinstein-Korn-Miller, NY Civ Prac, par 4405.05, p 44-91; par 4404.37, p 44-85).

Since appellants in the Canigiani and Wilmar proceedings do not challenge the validity of Special Term's determination of the subject properties' fair market value or its computation of the proper assessments, those determinations need not be disturbed.

■ The appeal in the Raddock proceeding, however, may not be similarly disposed of. In *Matter of Colt Inds. v Finance Administrator of City of N.Y.* (54 NY2d 533, *supra*), the Court of Appeals held that subdivision 3 of section 720 of the Real Property Tax Law (L 1981, ch 1057), which again prohibited the use of the State rates to prove ratio in tax review proceedings was (1) constitutional on its face and (2) applied to those proceedings pending on December 3, 1981, the effective date of the legislation, where no evidentiary hearings had been held or interlocutory judgments made prior to that date. Since the proceeding in Raddock had not progressed to either of these latter stages at the time of the effective date of new subdivision 3 of section 720 of the Real Property Tax Law, that holding of the Court of Appeals mandates that the interlocutory judgment entered in the Raddock proceeding be reversed and the case remitted for new hearings pursuant to the provisions of the new subdivision 3 of section 720 of the Real Property Tax Law.

Nevertheless, despite the holding in *Matter of Colt Inds. v Finance Administrator of City of N.Y.* (*supra*), petitioner Raddock contends that Special Term was correct in using the State rates in this proceeding based on the doctrine of collateral estoppel. However, both Special Term and Raddock have misconstrued the reasoning of the Court of Appeals in *Matter of Slewett & Farber* (*supra*) regarding the doctrine of collateral estoppel. That doctrine is only applicable where the use of the State rates is not otherwise barred by a valid and applicable statute. The doctrine cannot be used to negate an act of the Legislature which validly prohibits the use of the State rates in a particular proceeding. Indeed, the fallacy of Raddock's argument (and that of the decision at Special Term) can be demonstrated by his reliance on *McCrory Corp. v Gingold* (52 AD2d 23). In that case, the court utilized the doctrine of collateral estoppel and held that the City of Syracuse could not

relitigate the issue of the validity of the State rates when that issue had been litigated in *Guth Realty v Gingold* (*supra*) for similar property on the same tax roll for the same tax years. However, in contrast to the Raddock proceeding, the relevant statute in effect at the time of the *McCrory* (*supra*), decision, as well as its immediate predecessor (Real Property Tax Law, § 720, former subd 3; L 1969, ch 302; L 1961, ch 942) both allowed the use of the State rates.

The crucial distinction can be discerned from the language of the plurality opinion of this court in *Matter of Slewett & Farber* (80 AD2d 186, 221, *supra*), wherein we stated: "[T]he alteration of procedure has suppressed any potential collateral estoppel effects which might otherwise derive from the judgment because it was predicated upon the supplanted evidentiary rules (see *Schwartz v Public Administrator of County of Bronx*, 24 NY2d 65, 72)".

Moreover, our determination in this regard is also supported by subdivision (4) of section 28 of the Restatement, Judgments 2d, which provides:

"§ 28. Exceptions to the General Rule of Issue Preclusion

"Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances * * *

"(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action".

Accordingly, the order granting partial summary judgment to petitioner Raddock on the issue of ratio and entitling him to utilize the State rates for the tax years 1965/1966 through 1980/1981, should be reversed, and the matter remitted for further proceedings in accordance with this opinion.

DAMIANI, J. P., TITONE, LAZER and GIBBONS, JJ., concur.

In Proceeding No. 1, judgment of the Supreme Court, Nassau County, entered October 20, 1981, modified, on the law, by deleting the second decretal paragraph thereof, which declared chapter 126 of the Laws of 1979, insofar as it prohibits the use of State equalization rates promulgated by the State Board of Equalization and Assessment as a method of proving inequality, unconstitutional. As so modified, judgment affirmed insofar as appealed from, without costs or disbursements.

In Proceeding No. 2, judgment of the Supreme Court, Nassau County, entered October 20, 1981, modified, on the law, by deleting the second decretal paragraph thereof, which declared chapter 126 of the Laws of 1979, insofar as it prohibits the use of State equalization rates promulgated by the State Board of Equalization and Assessment as a method of proving inequality, unconstitutional. As so modified, judgment affirmed insofar as appealed from, without costs or disbursements.

In Proceeding No. 3, order of the Supreme Court, Nassau County, entered September 28, 1982, reversed, without costs or disbursements, and matter remitted to Special Term for further proceedings consistent with the opinion herein.